# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DEPUY SYNTHES SALES, INC.,**

                **Plaintiff,**

    **vs.**

**GLOBUS MEDICAL, INC., RONALD G. SPORER, and GREGORY M. JANOFSKY,**

                **Defendants.**

**CIVIL ACTION NO. _____**

## NOTICE OF REMOVAL

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA:

PLEASE TAKE NOTICE that Defendants Globus Medical, Inc. ("Globus"), Ronald G. Sporer ("Sporer"), and Gregory M. Janofsky ("Janofsky," and collectively, "Defendants"), hereby remove the above-captioned action from the Montgomery County Court of Common Pleas to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  In support of this Notice of Removal, Defendants provide the following "short and plain statement of the grounds for removal" pursuant to 28 U.S.C. § 1446(a).  *See Dart Cherokee Basin Operating Co., LLC v. Owens*, __ U.S. __, 135 S. Ct. 547, 551 (2014).

1.      On March 2, 2018, Plaintiff DePuy Synthes Sales, Inc. ("Plaintiff") commenced an action against Defendants in the Montgomery County Court of Common Pleas, Case No. 2018-04498.

2.      Plaintiff served a Notice to Defend and the Complaint on Globus on March 2, 2018, and delivered Notices to Defend and copies of the Complaint to Sporer and Janofsky soon

thereafter.  Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the Notice to Defend,

Complaint, and available service of process paperwork are attached as **Exhibit ("Ex.") A.**  No

other process, pleadings, or orders have been filed in this action.

3.      Plaintiffs assert claims against Globus for tortious interference with contractual

and business relations, *see* Compl. ¶¶ 86-94, and unfair competition, *see id.* ¶¶ 95-100.  Plaintiffs

further allege claims against Sporer and Janofsky for breach of contract, *see* Compl. ¶¶ 74-85,

and unfair competition, *see id.* ¶¶ 95-100.

4.      Defendants believe that Plaintiff's claims are without merit.

5.      This Notice of Removal is being filed within thirty days of Defendants' receipt of

service of the Complaint, as required by 28 U.S.C. § 1446(b).

6.      This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a)(1),

because this is an action between citizens of different States, and the amount in controversy

exceeds the sum or value of $75,000, exclusive of interest and costs.

7.      Venue is proper in this Court.  Plaintiff filed the action in the Montgomery

County Court of Common Pleas.  Venue therefore properly lies in the United States District

Court for the Eastern District of Pennsylvania, the district and division embracing Montgomery

County, pursuant to 28 U.S.C. §§ 118(a) and 1441(a).

8.      Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served

on Plaintiff's counsel and a copy is being filed with the Montgomery County Court of Common

Pleas.

## DIVERSITY OF CITIZENSHIP

9.      Plaintiff is a corporation organized and incorporated under the laws of the Commonwealth of Massachusetts, with its principal place of business in Massachusetts. Compl. ¶ 9. Plaintiff is thus a citizen of Massachusetts for purposes of this removal. *See* 28 U.S.C. § 1332(c)(1). Although Plaintiff asserts that it "is registered to do business in the Commonwealth of Pennsylvania and maintains substantial operations for it trauma medical device business in the Commonwealth of Pennsylvania," Compl. ¶ 9, that does not convert Plaintiff into a citizen of the Commonwealth of Pennsylvania, *see* 28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010) (explaining that a corporation's principal place of business can only be found in "a single place").

10.      Defendant Globus is a corporation organized and incorporated under the laws of the State of Delaware, with its principal place of business in the Commonwealth of Pennsylvania. Compl. ¶ 10. Globus is thus a citizen of Delaware and Pennsylvania for purposes of this removal. *See* 28 U.S.C. § 1332(c)(1).

11.      Defendant Ronald G. Sporer is an individual who resides in and is a citizen of the State of Michigan. Compl. ¶ 11.

12.      Defendant Gregory M. Janofsky is an individual who resides in and is a citizen of the State of New Jersey. Compl. ¶ 12.

13.      Therefore, complete diversity of citizenship between the parties to this suit exists under 28 U.S.C. § 1332(a).

## AMOUNT IN CONTROVERSY

14.      Diversity jurisdiction under 28 U.S.C. § 1332 also requires that the amount in controversy exceed $75,000, exclusive of interest and costs.

15.     Upon information and belief, Defendants assert that Plaintiff's request for, among other forms of requested relief, "[a]ctual damages," "[i]ncidental and consequential damages," and "punitive damages" totals a sum greater than $75,000. *See, e.g.*, Compl. p. 37 (Prayer for Relief); Court of Common Pleas Civil Cover Sheet (requesting "[m]oney [d]amages" of "[m]ore than $50,000").

## NO WAIVER

16.     Nothing in this Notice of Removal should be interpreted as a waiver or relinquishment of Defendants' rights to assert defenses or objections including, without limitation, the defenses of (i) lack of jurisdiction over the person, (ii) improper venue and/or *forum non conveniens*, (iii) insufficiency or lack of process or service of process, (iv) improper joinder of claims and/or parties, (v) failure to state a claim, (vi) failure to join an indispensable party(ies), or (vii) any other procedural or substantive defense available under state or federal law.

17.     If any question arises as to the propriety of the removal of this action, Defendants request the opportunity to brief any disputed issues and to present further evidence and oral argument in support of their position that this case was properly removed.

## CONCLUSION

18.     Complete diversity exists between Plaintiff and Defendants, and the amount in controversy exceeds $75,000. Accordingly, this Court has original jurisdiction over this action under 28 U.S.C. § 1332(a).

4

WHEREFORE, Defendants hereby remove this action from the Montgomery County Court of Common Pleas to this, the United States District Court for the Eastern District of Pennsylvania.

March 20, 2018

Respectfully submitted,

**WILMER CUTLER PICKERING HALE AND DORR LLP**

By: _____

Matthew Celestin
Pa. I.D. No. 316004
matthew.celestin@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000 (telephone)
(202) 663-6363 (fax)

Hallie B. Levin
(*Pro Hac Vice* forthcoming)
hallie.levin@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich St.
New York, NY 10007
(212) 230-8800 (telephone)
(212) 230-8888 (fax)

*Counsel for Defendants Globus Medical, Inc., Ronald G. Sporer, and Gregory M. Janofsky*

# Exhibit A



## CSC

RXT / ALL
Transmittal Number: 17842555
Date Processed: 03/02/2018

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Kelly Huller<br>Globus Medical, Inc.<br>2560 General Armistead Ave.<br>Audubon, PA 19403 |
| **Electronic copy provided to:** | Theresa Byron<br>Therese Martin |

| | |
|---|---|
| **Entity:** | Globus Medical, Inc.<br>Entity ID Number 2875251 |
| **Entity Served:** | Globus Medical Inc |
| **Title of Action:** | Depuy Synthes Sales, Inc vs. Globus Medical, Inc |
| **Document(s) Type:** | Notice and Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Montgomery County Court of Common Pleas, Pennsylvania |
| **Case/Reference No:** | 2018-04498 |
| **Jurisdiction Served:** | Delaware |
| **Date Served on CSC:** | 03/02/2018 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Sender Information:** | Anthony B. Haller (<br>215-569-5690 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

AFFIDAVIT OF SERVICE

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

DEPUTY SYNTHES SALES INC.,

                Plaintiff,

           v.

GLOBUS MEDICAL, INC.,

                Defendant.

C.A. No.: 2018-04498

STATE OF DELAWARE      }
                        }ss.
COUNTY OF NEW CASTLE   }

I, Kendra Watson, of Parcels Inc., the State of Delaware, County of New Castle, being duly sworn, says that on the 2nd day of March, 2018, at 3:47 p.m., I personally served a copy of a COMPLAINT with supporting documents on **GLOBUS MEDICAL, INC.,** by serving the registered agent Corporation Service Company, at 251 Little Falls Drive, Wilmington, DE 19808.

Name of individual accepting service: Lynanne Gares-Authorized to accept
Description of individual: Caucasian female, 35-40 years of age, 5'5" tall, 150lbs with brown hair.

*Kendra L. Watson*

Subscribed and sworn before me
This 2nd day of March, 2018

Notary Public

My commission expires:

ZAHID HOSSAIN NAWAZ
MY COMMISSION
EXPIRES
OCT. 10, 2018
NOTARY PUBLIC
STATE OF DELAWARE

Case# 2018-04498-1 Docketed at Montgomery County Prothonotary on 03/02/2018 9:50 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2018-04498-2 Docketed at Montgomery County Prothonotary on 03/07/2018 11:58 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

IN THE COURT OF THE COMMON PLEAS OF MONTGOMERY COUNTY PENNSLYVANIA

AFFIDAVIT OF SERVICE                    No. 2018-04498

DEPUY SYNTHES SALES, INC.,
325 Paramount Drive,
Raynham, Massachusetts 02767.

                          Plaintiff.

       v.

GLOBUS MEDICAL, INC.,
2560 General Armistead Avenue
Audubon, Pennsylvania 19403;

RONALD G. SPORER,
45932 Barlett Drive,
Canton, Michigan 48187; and

GREGORY M. JANOFSKY,
36 Millpond Road,
Jackson, New Jersey 08527,

                          Defendants.


I Denise Miller 36500 Ford Rd suite 118 Westland MI, 48185  first  say that I am over the age of 18 and not a party to this action. On March 5, 2018 at 5:22 pm I was able to execute service of a Civil Cover Sheet, Notice to Defend and Complaint. to Ronald G. Sporer at 45932 Bartlett Drive Canton MI, 48187.

Description: Caucasian male, approx., 40 yrs., 6'2" tall, 220 lbs, and has shaved head.


I declare under penalty and perjury that the information contained herein is true and correct.

This Affidavit was executed on March 6, 2018


Signature of Process server


Denise Miller _Denise Miller_

# Affidavit of Process Server

Case# 2018-04498-3 Docketed at Montgomery County Prothonotary on 03/07/2018 11:58 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

In The Court of Common Pleas of Montgomery County, PA
(NAME OF COURT)

Depuy Synthes Sales ___ vs Globus Medical, Inc. et al. ___ **2018-04498**
PLAINTIFF/PETITIONER          DEFENDANT/RESPONDENT          CASE NUMBER

I Tom Fredericks ___ , being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service.

Service: I served Gregory M. Janofsky ___
                    NAME OF PERSON / ENTITY BEING SERVED

with (list documents) Civil Cover Sheet, Complaint, Notice to Defend ___

by leaving with **Corey Janofsky** ___ **Father** ___ At ___
                    NAME                    RELATIONSHIP

☑ Residence 36 Millpond Road ___ Jackson, NJ ___
                 ADDRESS                CITY / STATE

☐ Business ___
              ADDRESS                CITY / STATE

On March 5, 2018 ___ AT 11:40 am ___
        DATE                         TIME

☐ Inquired if subject was a member of the U.S. Military and was informed they are not.

Thereafter copies of the documents were mailed by prepaid, first class mail on ___
                                                                                  DATE

from ___
       CITY            STATE            ZIP

**Manner of Service:**
☐ **Personal:** By personally delivering copies to the person being served.
☑ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of 18 ___ and explaining the general nature of the papers.
☐ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.
☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.

**Non-Service:** After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address    ☐ Moved, Left no Forwarding    ☐ Service Cancelled by Litigant    ☐ Unable to Serve in Timely Fashion
☐ Address Does Not Exist    ☐ Other ___

**Service Attempts:** Service was attempted on: (1) ___    (2) ___
                                              DATE    TIME        DATE    TIME

(3) ___    (4) ___    (5) ___
     DATE    TIME         DATE    TIME         DATE    TIME

**Description:.** Age 55 ___ Sex M ___ Race W ___ Height 6' ___ Weight 220 ___ Hair blk ___ Beard ___ Glasses ___

_____
SIGNATURE OF PROCESS SERVER

SUBSCRIBED AND SWORN to before me this 7th ___ day of March ___, 20 18, by Tom Fredericks
Proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

FREDERICKS & PALMER PROCESS
SERVING
1125 ATLANTIC AVENUE SUITE 502
ATLANTIC CITY NJ 08401
609-233-6743

_____
SIGNATURE OF NOTARY PUBLIC

NOTARY PUBLIC for the state of NJ

FORM 2    NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS

ANTHONY PALMER
ID # 2625811
NOTARY PUBLIC
STATE OF NEW JERSEY
My Commission Expires March 2, 2000

1/1

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

DEPUY SYNTHES SALES INC

vs.

GLOBUS MEDICAL INC

NO.  2018-04498

## NOTICE TO DEFEND - CIVIL

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY  BAR  ASSOCATION
100 West Airy Street (REAR)
NORRISTOWN, PA 19404-0268

(610) 279-9660, EXTENSION 201

PRIF0034
R 10/11

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

DEPUY SYNTHES SALES INC

vs.

GLOBUS MEDICAL INC

NO.  2018-04498

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## CIVIL COVER SHEET

State Rule 205.5 requires this form be attached to any document commencing an action in the Montgomery County Court of Common Pleas.  The information provided herein is used solely as  an aid in tracking cases in the court system.  This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

Name of Plaintiff/Appellant's Attorney: ANTHONY B HALLER, Esq., ID: 37017

Self-Represented (Pro Se) Litigant ☐

**Class Action Suit**   ☐ Yes   ☒ No

**MDJ Appeal**   ☐ Yes   ☒ No

**Money Damages Requested** ☒

**Commencement of Action:**

Complaint

**Amount in Controversy:**

More than $50,000

## Case Type and Code

Contract: _____

Employment Dispute: Other _____

**Other:** _____

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**BLANK ROME LLP**

Anthony B. Haller (Pa. I.D. No. 37017)
Leigh Ann Buziak (Pa. I.D. No. 93949)
Kevin M. Passerini (Pa. I.D. No. 203169)
One Logan Square
Philadelphia, PA 19103
Tel.:  (215) 569-5690 / 5386 / 5466
Fax:  (215) 832-5690 / 5386 / 5466
haller@blankrome.com
lbuziak@blankrome.com
passerini@blankrome.com

*Attorneys for Plaintiff DePuy Synthes Sales,*
*Inc.*

|  |  |
|---|---|
| DEPUY SYNTHES SALES, INC.,<br>325 Paramount Drive,<br>Raynham, Massachusetts 02767,<br><br>             Plaintiff,<br><br>   v.<br><br>GLOBUS MEDICAL, INC.,<br>2560 General Armistead Avenue<br>Audubon, Pennsylvania 19403;<br><br>RONALD G. SPORER,<br>45932 Barlett Drive,<br>Canton, Michigan 48187; and<br><br>GREGORY M. JANOFSKY,<br>36 Millpond Road,<br>Jackson, New Jersey 08527,<br><br>           Defendants. | **COURT OF COMMON PLEAS**<br>**MONTGOMERY COUNTY**<br><br>CASE NO.: _____<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff DePuy Synthes Sales, Inc. ("DePuy Synthes") files this Complaint against

Defendants Globus Medical, Inc. ("Globus") and former DePuy Synthes employees Ronald G.

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Sporer ("Sporer") and Gregory M. Janofsky ("Janofsky") (collectively, the "Defendants"), and in support thereof avers as follows:

## INTRODUCTION

1.  This case involves violations of non-competition and non-solicitation obligations, tortious interference with contractual relations, and unfair competition related to Globus's recruitment of DePuy Synthes' employees to help build its fledgling trauma medical device business. Globus expects that these recruitment efforts will then lead to the conversion of DePuy Synthes' investments in the former employees' access to confidential information, specialized training, customer relationships, and goodwill and the rapid ramp up of Globus's rollout and sale of trauma products to longtime DePuy Synthes customers. Globus's recent recruitment and employment of Defendants Sporer and Janofsky in violation of their obligations to DePuy Synthes reflects Globus's willingness to engage in unlawful tactics to advance these goals.

2.  Globus worked through the group of former DePuy Synthes regional managers it hired earlier in 2017 and stationed throughout the country to identify and recruit Sporer in Michigan and the DePuy Synthes trauma sales team assigned to the Jersey Shore area, consisting of Janofsky and his DePuy Synthes teammate Alfred J. Zimmerman ("Zimmerman"). (Sporer, Janofsky, and Zimmer are referred to collectively herein as the "Sales Consultants.") Months before the Sales Consultants' coordinated resignations in November 2017, they were in contact with former DePuy Synthes regional managers who had been hired by Globus. During Globus's months-long recruitment efforts and while planning for their business contributions to Globus, the Sales Consultants continued to enjoy access to DePuy Synthes' confidential information, customer relationships, and good will and continued to benefit from DePuy Synthes' investments in specialized training.

4

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

3.     In August 2017, Sporer prepared a business plan in anticipation of his employment with Globus. Sporer's plan evinces an intent to work behind the scenes to convert customers for whom he had been directly responsible and in contact during his employment with DePuy Synthes. During the first thirty days, Sporer plans to "schedule high priority surgeons to attend an HQ visit" at Globus's facilities, to "*[l]everage [his] network of surgeons in Michigan*" (emphasis added), and to "[n]etwork with [his] colleagues in [Globus] spine to develop leads" and "foster growth opportunities" in Globus's spine business as well. During the next sixty days, his plan is to "[v]isit [his] network of surgeons outside of SE Michigan (Grand Rapids, Kalamazoo, Lansing) and schedule HQ visits to gain buy-in for future conversions."

4.     Sporer's Globus business plan has been put into action since joining Globus. Upon information and belief, Sporer has remained in communication with staff from at least two accounts from his former DePuy Synthes territory, including a key hospital staff member recently recruited by Globus for employment—diverting to Globus a DePuy Synthes hiring plan Sporer had developed in conjunction with his team during his employment with DePuy Synthes. Upon information and belief, Sporer has also been engaged with Jeff Colonna ("Colonna"), a former DePuy Synthes regional manager who resigned less than one year ago and continues to owe obligations to DePuy Synthes, in connection with Colonna's role as a sales manager for Globus. Just this week, Sporer admitted to a former DePuy Synthes teammate that he had driven his Globus manager to various accounts in his former territory in order to interact with customers face-to-face, including, without limitation, a visit during which Sporer himself was involved in at least one in-person conversation with hospital staff in violation of his contractual obligations.

5.     Globus has worked through, among others, another former DePuy Synthes regional manager, Joe Gaynor ("Gaynor"), to solicit a number of DePuy Synthes' sales personnel

5

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

in New Jersey and Pennsylvania that Gaynor previously supervised as a regional manager. Globus's and Gaynor's identification of Janofsky and Zimmerman as valuable targets and their coordinated solicitation and recruitment of them was purposeful. Zimmerman and Janofsky worked as a team in the Jersey Shore area and were responsible for a major DePuy Synthes customer for whom Gaynor had previously had responsibility as a manager and with whom Gaynor had contact during the last eighteen months of his employment with DePuy Synthes, including at a group dinner in New York City that he expensed to DePuy Synthes.

6. Because Zimmerman served as the senior member of the team, having long serviced the DePuy Synthes customers in the territory, Globus's use of Gaynor and parallel recruitment of Zimmerman and Janofsky are designed to undercut and convert DePuy Synthes' customer relationships in the former team territory covered by Janofsky and Zimmerman, threatening harm to DePuy Synthes' business in the Jersey Shore area. That plan has now come to fruition, as Janofsky has been directly observed by DePuy Synthes personnel covering surgeries at two different accounts within Janofsky's and Zimmerman's former DePuy Synthes team territory with two different DePuy Synthes surgeon customers. Janofsky has also been observed delivering surgical sets containing Globus's new trauma implants and instrumentation to at least two other facilities within his former territory. And after attempting to convert a distal radius surgery at one facility recently, Janofsky and Gaynor camped out in the lounge of the facility for a large portion of the day to speak with other physicians in their effort to promote Globus's competing trauma products

7. Whether intended for immediate conversion of business or future conversion of business, Sporer's and Janofsky's activities in their former territories and with surgeon customers or accounts for whom they had been responsible while employed by DePuy Synthes

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

and their coordination with other Globus employees, including, without limitation, former DePuy Synthes regional managers Colonna and Gaynor, constitute violations of their non-competition and customer non-solicitation obligations to DePuy Synthes, at minimum. Globus's actions, including, without limitation, the actions undertaken and facilitated by the Sales Consultants' on Globus's behalf and those directly encouraged and supported by its other employees, are a classic form of unfair competition: specifically and purposefully targeting DePuy Synthes' employees to appropriate and exploit DePuy Synthes' investments in confidential information, specialized training, and customer relationships and to trade off of the longstanding goodwill generated by DePuy Synthes with its customers, without regard for and in violation of enforceable non-competition, non-solicitation, and confidentiality obligations its recruits owe to DePuy Synthes.

8.     The Defendants' unlawful activities have inflicted and will continue to inflict significant, irreparable harm—harm that cannot be fully measured and calculated or compensated through monetary damages alone—and DePuy Synthes files this Complaint to remedy the harms caused by the Defendants' unlawful competitive activities through, among other remedies, an award of damages, attorney's fees and costs, and equitable relief.

## PARTIES

9.     Plaintiff DePuy Synthes Sales, Inc. is a Massachusetts corporation with its principal place of business in Raynham, Massachusetts. DePuy Synthes Sales, Inc. is registered to do business in the Commonwealth of Pennsylvania and maintains substantial operations for its trauma medical device business in the Commonwealth of Pennsylvania in Chester County. DePuy Synthes Sales, Inc. is the sales arm for the entire product portfolio of the functionally integrated DePuy Synthes family of entities and has standing to enforce the contracts at issue in

7

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

this Complaint as an express party to the contracts or as an express beneficiary and assignee, as set forth therein.

10.     Defendant Globus Medical, Inc. is a Delaware corporation with its principal place of business in Audubon, Pennsylvania, located in Montgomery County.

11.     Defendant Ronald G. Sporer is an adult citizen of the State of Michigan who, upon information and belief, resides at 45932 Barlett Drive in Canton, Michigan 48187.

12.     Defendant Gregory M. Janofsky is an adult citizen of the State of New Jersey who, upon information and belief, resides at 36 Millpond Road in Jackson, New Jersey 08527.

### JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this controversy pursuant to 42 PA. CON. STAT. ANN. § 931(a) and may properly exercise personal jurisdiction over the Defendants pursuant to 42 PA. CON. STAT. ANN. § 5322 and the United States Constitution.  Venue is proper in this Court pursuant to Pennsylvania Rules of Civil Procedure 1006 and 2179(a).

14.     Globus maintains its principal place of business in Montgomery County, Pennsylvania, including not only management and operations of its business but also functions supporting its business and the development, regulatory approval, manufacture, and sale of its competitive surgical implants and instrumentation.  Upon information and belief, revenue generated by the sales of Globus's products is earned and paid in the Commonwealth of Pennsylvania, and compensation paid to Sporer and Janofsky by Globus, including any commissions or guarantee, is managed and paid by Globus from Pennsylvania.  Upon information and belief, Sporer and Janofsky communicated to, from, and within Montgomery County, Pennsylvania regarding their employment with Globus, and they have facilitated the training and targeting of DePuy Synthes customers for visits to Globus's headquarters in

8

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Montgomery County, Pennsylvania, both of which are subjects of this lawsuit. Upon information and belief, assets that are the subject of equitable remedies are located in Montgomery County, Pennsylvania, including revenues generated and received by Globus in Montgomery County, Pennsylvania and resulting profits which are subject to an accounting, disgorgement, and constructive trust. Furthermore, Globus is or will be, upon information and belief, indemnifying the Defendants Sporer and Janofsky for fees and costs incurred in connection with this litigation, rendering the Defendants closely related and/or in privity.

15.   Venue is proper in this Court under 231 PA. CODE RULES 1006(a) and 2179 because (1) with respect to Defendants Sporer and Janofsky, DePuy Synthes' claims arose in Montgomery County, Pennsylvania, transactions and occurrences took place in Montgomery County, Pennsylvania, out of which DePuy Synthes' causes of action arose, and assets or part of the property that are the subject of equitable remedies are located in Montgomery County, Pennsylvania; and (2) with respect to Defendant Globus, Montgomery County is the county where Globus's principal place of business is located, the county where Globus regularly transacts business, the county where DePuy Synthes' causes of action arose, the county where transactions and occurrences took place, out of which DePuy Synthes' causes of action arose, and the county where assets or part of the property which are the subject matter of equitable remedies in this matter are located. In addition, or in the alternative, venue is appropriate under 231 PA. CODE RULE 1006(c)(1) as to all Defendants because they are jointly and severally liable as joint tortfeasors and because venue is appropriate in Montgomery County as to at least one of the Defendants pursuant to 231 PA. CODE RULES 1006(a) and 2179. Furthermore, Defendant Sporer agreed that his contractual obligations to DePuy Synthes—with which Globus has tortiously interfered—are subject to and governed by the laws of the Commonwealth of

9

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Pennsylvania and shall be exclusively enforced in the state or federal courts in the Commonwealth of Pennsylvania, confirming that venue is also appropriate in this Court pursuant to 231 PA. CODE RULE 1006(a)(1).

16.     Because Globus is a citizen of the Commonwealth of Pennsylvania, there is no basis for any of the Defendants to remove this matter to any federal court on the basis of alleged diversity jurisdiction.

### FACTS SUPPORTING DEPUY SYNTHES' COMPLAINT

### DePuy Synthes Is a Leader in the Highly Competitive Medical Device Business

17.     DePuy Synthes is a worldwide leader in the highly competitive medical device industry, and designs, manufactures, markets, and sells medical implants and instrumentation such as plates, screws, rods, and other devices used in orthopedic surgeries for internal fixation of broken bones and for spinal and facial surgery.

18.     The medical device business is highly competitive, and the protection of DePuy Synthes' confidential information, customer relationships, and goodwill are vital to prevent competitors or would-be competitors from obtaining an unfair competitive advantage and from exploiting the investments DePuy Synthes has made in not only research and development but also the formation and expansion of customer relationships and the recruitment, training, and development of a knowledgeable sales force.

19.     DePuy Synthes' customers include any entity, client, account, or person including the employees, agents, or representatives of the foregoing, or any entity or person who participates, influences or has any responsibility in making purchasing decisions on behalf of such entities, clients, accounts or persons such as, without limitation, group purchasing organizations (also known as "GPOs") or integrated delivery networks (also known as "IDNs"),

10

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the
Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

health systems, hospitals and surgery centers and their materials management, operating room,

sterile processing, purchasing, and related personnel, and physicians and their partners,

employees, and staff nurses (collectively, the "Customers" and each a "Customer").

## DePuy Synthes' Trauma Sales Force

20.     DePuy Synthes markets and sells its products through a sales force that is

comprised primarily of sales consultants who are primarily assigned to specific territories.  In

general, sales consultants, such as Sporer, report to a regional manager responsible for sales in a

particular geographic region and teams of sales consultants, such as Zimmerman and Janofsky,

report to either a regional manager or to a team lead responsible for sales in that particular team

geography, who then reports to a regional manager.  In turn, regional managers report to an area

vice president with responsibility for sales in a larger geographic area, and the area vice president

reports to the vice president of sales with responsibility for nationwide trauma sales.

21.     Generally, sales consultants are expected to provide technical support to

Customers using DePuy Synthes' products in the hospital and surgery center settings, and

regional managers are responsible for coordinating and managing sales consultants, developing

sales strategies, and coordinating contract negotiations in particular regions.  Consequently,

DePuy Synthes' regional managers and sales consultants work hand-in-hand to maximize sales

and routinely collaborate on business planning and strategy, Customer engagement, competitive

threats and responses, inventory allocation, product rollout, and pricing and strategic initiatives.

22.     Regional managers and sales consultants have access to confidential information

related to the business for their own regions and sales territories (including team territories,

where applicable) and beyond, including, without limitation, periodic and year-end sales data,

performance rankings, sales by pathology and product line, special pricing arrangements and

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

discounts, as well as information related to DePuy Synthes' research and development plans and strategy and sensitive discussions between DePuy Synthes and DePuy Synthes' Customers related to the development and rollout of new products and initiatives, the refinement of existing products, and the development of custom products.

23.     To better serve DePuy Synthes' Customers, DePuy Synthes' regional managers and sales consultants receive specialized training on the technical aspects of DePuy Synthes' products and the medical procedures in which these products are used; techniques for educating operating room personnel and surgeons as resources on the technical aspects of DePuy Synthes' products during medical procedures; and the use of new and existing implants and instrumentation, as well as information regarding DePuy Synthes' contract and sales administration, personnel, and other departments.

24.     DePuy Synthes also provides its regional managers and sales consultants with access to confidential information about DePuy Synthes' Customers and business activities, including information pertaining to pricing, marketing, and sales strategies, competitive responses, and product development research, pipelines, and release schedules, incentives, and strategies. In their supervisory role over sales consultants, regional managers are also privy to confidential business information pertaining to performance and Customer sales and strategies outside of their regions, including sensitive pricing information electronically compiled in a format pertaining to specific territories, accounts, and products with specific pricing and discount information, strategic product development and Customer initiatives, and information related to compensation and performance of sales personnel, including sales consultants.

25.     DePuy Synthes also provides its regional managers and sales consultants with direct access to DePuy Synthes' Customer relationships. Indeed, they are responsible for

12

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

maintaining and developing those Customer relationships and growing DePuy Synthes' business by establishing or re-establishing relationships with other Customers.

26.     To protect all of these investments as well as DePuy Synthes' Customer relationships and goodwill, DePuy Synthes requires sales employees to enter into agreements that contain restrictions on their use of DePuy Synthes' confidential information, Customer relationships, and specialized training as a condition of their employment with DePuy Synthes.

27.     These agreements are part of a larger effort by DePuy Synthes to protect its confidential information and the investments it makes in research and development, training, Customer relationships, and goodwill, including, without limitation, obtaining patent protection when available, maintaining physical and electronic limitations or barriers to access business information, and requiring employees and third parties to maintain the confidentiality of certain business information.

**Globus's History of Unfair Competition with DePuy Synthes and Poaching of DePuy Synthes' Trauma Management and Sales Force to Establish a Competing Trauma Division**

28.     Globus and DePuy Synthes are direct competitors in the highly-competitive medical device business, and DePuy Synthes has been in litigation with Globus regarding Globus's tortious and unfair business practices for more than a decade, beginning with the efforts of two former DePuy Synthes employees who formed Globus in 2003. *See Synthes v. Globus*, 2007 U.S. Dist. LEXIS 50812, *2-3 (E.D. Pa. July 12, 2007).

29.     One of the underlying issues in that first case was Globus's involvement in the recruitment and hiring of sales representatives in South Carolina and Georgia, who were ultimately held in contempt by the court. *See Walden*, 2006 U.S. Dist. LEXIS 80751, *2 (E.D. Pa. Oct. 20, 2006). The main *Synthes v. Globus* case, along with the contempt cases and a few

13

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

other parallel cases involving other former DePuy Synthes' employees that worked for Globus distributors, settled after three weeks of trial for $13.5 million.

30.      That initial string of litigation was quickly followed by another in Pennsylvania state court, beginning with Globus's recruitment and hiring of a product development manager in 2008, which the state court enjoined. *See Myer*, No. 2008-10358-IR (C.C.P. Chester County Jan. 7, 2009). The *Myer* case, along with six other then-pending matters related to Globus's unlawful hiring practices were resolved in a global settlement in 2010. However, Globus again quickly supported violations of contractual obligations owed to DePuy Synthes, beginning with a matter in Pennsylvania state court in late 2012 in which the state court found that, "[d]espite its awareness of Harrison's contractual obligations to Synthes, Globus employed Harrison in a position that will require Harrison to solicit his former Synthes Customers in direct violation of the 2007 Agreement." *Harrison*, No. 2012-12021 (C.C.P. Chester County May 19, 2014) at p. 11.

31.      Globus continued to poach a number of DePuy Synthes employees from its Spine division in violation of their agreements with DePuy Synthes with schemes to flip-flop multiple Sales Consultants between territories to give the appearance of compliance with the Sales Consultants' obligations, including state court litigation related to Globus's activities in the Northwest and a more recent case in Pennsylvania federal court related to Globus's activities in New Jersey.

32.      Globus is publicly traded on the New York Stock Exchange (NYSE:GMED) with reported annual sales revenue in excess of $550 Million in 2016 and reported annual sales revenue in excess of $635 Million in 2017.

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/20/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

33.     Globus is now in the early stages of entering the highly competitive trauma market.  Having no prior experience or customer contacts in the trauma marketplace, to firmly establish itself in this new national market, Globus has embarked on a systematic campaign of poaching employees from DePuy Synthes, employing similar unlawful practices as in the building of Globus's spine business.  As noted in its February 22, 2018 Form 10-K filing with the United States Securities and Exchange Commission (the "SEC"), Globus is well-aware of the headwinds it faces in the trauma market:

> ***We have no prior experience marketing these new products, and we will need to convince a new audience of surgeons and hospital personnel that these products are attractive alternatives to competing products for use in applicable procedures***.  If we are not successful in convincing surgeons and hospitals of the merit of these products or educating them on their use, our sales and operating results may be negatively affected and we may not grow as quickly as we anticipate.

(emphasis added).  Globus has, therefore, implemented a recruitment scheme targeting DePuy Synthes' employees in order to obtain and convert DePuy Synthes' confidential information, specialized training, Customer relationships, and goodwill.

34.     Globus's efforts to establish its trauma business using DePuy Synthes' employees and their access to information and Customers started in approximately November 2016, when Globus attempted to hire DePuy Synthes' Area Vice President for the Northeast Area, Daniel Gregoris, as the trauma division's Vice President of Sales, only to be have his employment in that role quickly enjoined by a Pennsylvania federal court in January 2017.  Despite an injunction prohibiting Gregoris from assuming the position as Vice President of Sales for Globus' trauma business, Globus's subsequent presentation to investors at the industry's Orthopaedic Trauma Association ("OTA")—addressed in publications such as William Blair & Company, L.L.C.'s report in October 2017—confirms that Globus continues to hold Gregoris out

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

as being in this position in order to persuade DePuy Synthes' personnel to jump ship and join Globus.

35.    As revealed during Globus's recent quarterly earnings call, Globus has "now received FDA clearance for the 10 systems that [it has] identified as [] core systems" and has "begun doing cases on a limited basis with one system"—upon information and belief, its distal radius system.  However, as noted during that earnings call, Globus's "focus now is building the inventory required to fully launch all these systems and recruiting a world-class sales force," with the expectation "to begin launching new systems throughout the first quarter with the full launch of all systems to clear[] in Q2" aided by "the quality and quantity of highly skilled successful sales representatives who have joined" Globus.

36.    By targeting large groups of DePuy Synthes' trauma management and using those former DePuy Synthes regional managers to identify and target DePuy Synthes sales consultants with direct, on-the-ground access to DePuy Synthes' key trauma Customers and related confidential information, Globus aims to establish a trauma sales force nearly identical to the one DePuy Synthes has built over the course of several decades and to use to its advantage the significant investments in research and development, specialized training, Customer relationships, confidential information and goodwill belonging to DePuy Synthes.  Globus knows that the confidential information possessed by DePuy Synthes' trauma employees, including Janofsky, Sporer, and the others hired by Globus, encompasses information regarding DePuy Synthes' surgeon customers that is vital to achieving the "goal" expressly stated in its February 22, 2018 SEC filing to market Globus's competing products to surgeons based, in part, on the "the surgeon's particular training and surgical preferences."

16

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

37.     During the preliminary injunction hearing in the *Gregoris* litigation, David Demski (now serving as Globus's Chief Executive Officer) explicitly testified that Globus has "talked to 40 or 50 people from [DePuy Synthes'] sales force" since J&J acquired Synthes. Upon information and belief, Globus intends to hire up to eighty DePuy Synthes' trauma consultants to man its trauma sales force.  Globus's plan was reflected in William Blair & Company, L.L.C.'s industry report in October 2017 following discussions with Globus representatives at OTA, during which Globus was unabashed in its plans to poach DePuy Synthes' employees to build its trauma organization.  And in the last two earnings calls with the investment community, Globus has focused squarely on its recruitment efforts generally and with respect to trauma.

38.     During its most recent earnings call on February 21, 2018, Globus's management noted that the company is still "heavily ramping up the sales force" for its trauma business as part of its "plan to compete head-to-dead with the market leader" and stressed the company's awareness of the "need to match up with them [geo]graphically and account by account" through "significant investment" in recruitment. Upon information and belief, Globus is targeting 80 DePuy Synthes employees as part of its recruitment scheme and over 40 DePuy Synthes' surgeon customers with whom those DePuy Synthes employees have valuable relationships.

39.     Through the large number of former DePuy Synthes employees already employed by Globus and the mass of DePuy Synthes employees Globus intends to hire, the confidential information these employees learned while working for DePuy Synthes will be disclosed and used to benefit Globus, to inform and implement Globus's business strategy, and to exploit and convert the Customer relationships and good will entrusted to those individuals during their employment with DePuy Synthes.  This confidential information includes, without limitation,

17

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

periodic and year-end sales data, performance rankings, sales by pathology and product line, special pricing arrangements and discounts, competitive responses, as well as information related to DePuy Synthes' research and development plans and strategy and sensitive discussions between DePuy Synthes and its Customers related to the development and rollout of new products and initiatives, refinement of existing products, development of custom products, and personnel and compensation.

40.     Globus's recent recruitment and employment of Defendants Sporer and Janofsky, along with Janofsky's teammate in the Jersey Shore territory, Zimmerman, are instances of Globus's implementation of its illicit scheme.

### Background Regarding Janofsky's and Sporer's Employment with DePuy Synthes

41.     DePuy Synthes hired Janofsky as a trauma territory assistant in the Jersey Shore territory on or about May 1, 2014, supporting Zimmerman, who had been hired by DePuy Synthes as a trauma sales consultant in 1999. Janofsky was later elevated to the position of sales consultant in the Jersey Shore territory working alongside his teammate, Zimmerman. The Jersey Shore sales territory encompasses a variety of Customers in and around the eastern coast of New Jersey, including, but not limited to, Bayshore Community Hospital, Jersey Shore University Medical Center, Monmouth Medical Center, Riverview Medical Center, Shrewsbury Surgery Center, and Toms River Surgery Center and all of the physicians and staff affiliated with those locations. As part of his role as sales consultant, Janofsky also was expected to provide coverage for surgeries scheduled at accounts assigned to other DePuy Synthes sales consultants. Janofsky resigned from his employment with DePuy Synthes on or about November 14, 2017 just minutes after Zimmerman resigned, effective November 17. By providing just three days' notice, Janofsky failed to comply with his contractual obligation to provide two-weeks' notice.

18

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

42.    DePuy Synthes hired Sporer as a trauma sales consultant on or about September 15, 2011.  Sporer was assigned to a sales territory in Michigan encompassing a variety of Customers in what was referred to as Team Detroit West in 2017, including Beaumont Hospital facilities, Henry Ford Hospital facilities, St. Joseph Mercy, and St. Mary Mercy, and, in 2016 as part of Team Ann Arbor, St. Joseph's Livingston and St. Joseph's Chelsea, and all of the physicians and staff affiliated with those locations, some of whom also had privileges in neighboring facilities outside of Sporer's assigned team territory.  As part of his role as sales consultant, Sporer also was expected to provide coverage for surgeries scheduled at accounts assigned to other DePuy Synthes sales consultants.  Sporer resigned his employment with DePuy Synthes on November 22, 2017, effective November 24, 2017, just a week after Janofsky and Zimmerman resigned.

43.    Janofsky and Sporer had access to confidential information related to the business in their assigned territories and beyond, including, without limitation, periodic and year-end sales data, performance rankings, sales by pathology and product line, and Customer-specific and GPO pricing and discounts as well as information related to DePuy Synthes' research and development plans and strategy and sensitive discussions between DePuy Synthes and DePuy Synthes' Customers related to the development and rollout of new products, the refinement of existing products, and the custom instrumentation and requests from surgeon customers.

44.    Janofsky and Sporer received specialized training on the technical aspects of DePuy Synthes' products and the medical procedures in which these products are used; techniques for educating operating room personnel and surgeons so that they could be resources on the technical aspects of DePuy Synthes' products during medical procedures; and the use of

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

new and existing implants and instrumentation, as well as information regarding DePuy Synthes' contract and sales administration, personnel, and other departments.

45.     DePuy Synthes also provided Janofsky and Sporer with access to confidential information about DePuy Synthes' Customers and business activities, including information pertaining to pricing, marketing, and sales strategies, competitive responses, and product development research, pipelines, and release schedules, incentives, and strategies that they would not have obtained but for their work for DePuy Synthes and their execution of their agreements.

46.     In order to build off of DePuy Synthes' significant investments in research and development, training, and confidential information, DePuy Synthes also provided Janofsky and Sporer with direct access to DePuy Synthes' Customer relationships and made them responsible for maintaining and developing the Customer relationships and growing DePuy Synthes' business by establishing relationships with other Customers in their assigned territories.

47.     To protect these investments as well as DePuy Synthes' Customer relationships and good will, DePuy Synthes required Janofsky and Sporer, like other DePuy Synthes sales employees, to enter into agreements containing non-solicitation, non-competition, and confidentiality obligations as a condition of their employment with DePuy Synthes—obligations that are generally standard in the industry and mirror those Globus requires of its employees.

48.     DePuy Synthes' agreements are part of a larger effort to protect its confidential information and the investments it makes in research and development, training, Customer relationships, and goodwill, including, without limitation, obtaining patent protection when available, maintaining physical and electronic limitations or barriers to access business information, and requiring employees and third parties to maintain the confidentiality of certain business information.

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

### Janofsky's and Sporer's Contractual Obligations to DePuy Synthes

49.     In consideration of his employment with DePuy Synthes and promotion to the position of Sales Consultant, Janofsky executed the Employee Secrecy, Intellectual Property, Non-Competition and Non-Solicitation Agreement attached hereto as Exhibit "A" on March 16, 2016 (the "Janofsky NCA," and together with the "Sporer NCA" (below), the "NCAs").

50.     In the Janofsky NCA, Janofsky agreed not to use or disclose DePuy Synthes' confidential information:

> Except as required by your duties for your EMPLOYER, you will not use, disclose, disseminate, lecture upon or publish any CONFIDENTIAL INFORMATION, either during your employment with your EMPLOYER or thereafter, unless you first obtain the prior written consent of any COMPANY to which the CONFIDENTIAL INFORMATION relates.

(*See* Ex. A at ¶ C(5).)

51.     Similarly, Janofsky was required to return all DePuy Synthes property, including confidential information, at the time of his resignation:

> Upon termination of your employment with your EMPLOYER, you will turn over to an individual designated by your EMPLOYER all property in your possession or custody belonging to your EMPLOYER or any other COMPANY, including any computer equipment. You shall not retain copies of any correspondence, memoranda, reports, notebooks, drawings, photograph, or other documents in any form whatsoever (including information contained in computer memory or on any computer disk) relating in any way to the affairs of your EMPLOYER or any other COMPANY that were entrusted to or obtained by you at any time during your employment with any COMPANY.

(*See* Ex. A at ¶ C(13).)

52.     Janofsky also agreed to a non-competition obligation such that, during his employment with DePuy Synthes and for a period of eighteen (18) months after his last day of employment with DePuy Synthes, he would not:

21

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

> directly or indirectly, perform work for any COMPETITOR in any position and in any location in which [he] could disadvantage any COMPANY or advantage the COMPETITOR by [his] disclosure or use of CONFIDENTIAL INFORMATION to which [he] had access.

(*See* Ex. A at ¶ C(6).)

53.   For purposes of Janofsky's non-competition obligation, his agreement defines "COMPETITOR" as "any person or entity outside the COMPANIES (a) that is engaged in or preparing to become engaged in research, development, production, marketing, selling of, or consulting on a product, process, technology, machine, invention or service in existence or under development that resembles or competes with an existing or potential product, process, technology, machine, invention, or service of any COMPANY or (b) that could benefit from CONFIDENTIAL   INFORMATION";   and   "CONFIDENTIAL   INFORMATION"   as "information about the business of any COMPANY, not generally known to the trade or industry in which the COMPANY is engaged, which is disclosed to [him] or known by [him] as a result of [his] employment by any COMPANY. CONFIDENTIAL INFORMATION includes, but is not limited to, (a) information that the COMPANY keeps confidential from competitors concerning such things as inventions, research, development, strategies, operations, logistics, manufacturing, distribution, purchasing, licensing, business planning and development, finance, computer software or hardware, automated systems, engineering, marketing, merchandising, selling, sales, personnel, customers or clients, including, but not limited to, sales volumes or strategies, number or location of sales representatives, names or significance of a COMPANY's customers or clients or their employees or representatives, preferences, needs or requirements, purchasing histories, or other customer or client-specific information; and (b) personal or business information about any COMPANY's employees, customers, vendors, consultants and

22

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

agents which is not publicly known and is disclosed to [him] or known by [him] in connection with [his] employment by any COMPANY." (*See* Ex. A at ¶ B.)

54.    The Janofsky NCA also contains a provision prohibiting contact with and solicitation or servicing of DePuy Synthes customers during his employment with DePuy Synthes and for a period of eighteen (18) months after the last day of his employment with DePuy Synthes, wherein Janofsky agreed that:

> To avoid disadvantaging [his] EMPLOYER or any other COMPANY through [his] use of relationships [he] gained, maintained, or enhanced through [his] employment with any COMPANY, [he] will not, during [his] employment with any COMPANY or for eighteen (18) months after [his] last date of employment within the COMPANIES, directly or indirectly, solicit any business from, sell to, or render any service to any accounts, customers or clients with which [he] ha[s] had contact during the last twelve (12) months of [his] employment within the COMPANIES in connection with the sale of any product or service that resembles or competes with one that is being (or is being prepared to be) sold, developed or acquired by any COMPANY for which [he] worked during the last twelve (12) months of [his] employment.

(*See* Ex. A at ¶ C(7)).

55.    Buttressing his fiduciary duties to DePuy Synthes and DePuy Synthes' ability to transition the servicing of accounts and patient care and to monitor and ensure compliance with his contractual obligations, Janofsky NCA also requires a two-week notice and transition period:

> For purposes of enabling your EMPLOYER and any other COMPANY with a competitive interest to monitor your compliance with your obligations under this Agreement, you will notify your EMPLOYER in writing, both at the time you give notice that you will be terminating your employment within the COMPANIES and whenever within the eighteen (18)-month period following the termination of such employment you plan to commence work with a new entity or person of: the identity of each entity or person for which you will be working, your new title, and the responsibilities of the position. During this time period you will also provide such notice as to any planned changes in your work responsibilities. You will provide the notices required under this paragraph to the highest-ranking employee in the Human Resources organization of your EMPLOYER and will do so promptly, and, in any event, at least two (2) weeks prior to commencing any new position or (if applicable) new responsibilities. You will promptly provide any additional information requested by your EMPLOYER

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/20/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

that is reasonably related to the purposes of this paragraph. The information you provide pursuant to this paragraph should not include any confidential information belonging to anyone outside the COMPANIES and will not be used except to evaluate your compliance with your obligations under this Agreement, to enforce those obligations, and to seek remedies for your breach or another party's interference with your obligations under this Agreement.

(*See* Ex. A at ¶ C(10).)

56.     In consideration of his employment with DePuy Synthes, Sporer executed the Confidentiality, Non-Solicitation and Non-Competition Agreement attached hereto as Exhibit "B" on September 15, 2011 (the "Sporer NCA"). Each of the obligations in the Sporer NCA run to a group of entities defined as Synthes, including "Synthes USA Sales, LLC, its members, and its and their parents, affiliates, subsidiaries, divisions, and related companies or entities, and their respective predecessors, successors and assigns, now existing or hereafter created, including but not limited to Synthes, Inc., Synthes USA HQ, Inc., Synthes USA Products, LLC, Synthes USA, LLC and The Anspach Effort, Inc." (Ex. B at p. 1.)

57.     Sporer agreed that DePuy Synthes' confidential information "includes (without limitation): (1) customer lists, customer preferences and customer usage history; (2) prices, renewal dates and other detailed terms of customer and supplier contracts and proposals; (3) pricing policies, methods of delivering services and products, marketing and sales strategies, product know-how, product technology and product development strategies; (4) physical security systems, access control systems, network and other equipment designs; (5) employment and payroll records; (6) forecasts, budgets and other non-public financial information; (7) product performance information, product technical information; product know-how, inventions (whether or not reduced to practice), discoveries, methodologies, algorithms, formulas, protocols, reports, data, results, observations, computer programs, patent applications, strategic plans, hypotheses, research directions, developments, improvements, drawings, designs, specifications, opinions of

24

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

legal counsel, and draft or final regulatory filings; and (8) expansion plans, management policies and other business strategies and policies." (Ex. B at p. 2.) And he further acknowledged that he understood confidential information to include information received from any customer or other person or entity who does business with DePuy Synthes. (*See id.* at p. 3.)

58.    In the Sporer NCA, Sporer agreed not to use or disclose DePuy Synthes' confidential information:

> In exchange for my being provided access to such [confidential] information, I agree that, at all times during and after my employment with Synthes [as defined], I will not disclose or communicate any of this information to any competitor or other third party, or use or refer to any of this information for any purpose, including but not limited to in the course of future employment for myself or any entity other than Synthes, or remove materials containing any of this information from Synthes' premises, except as necessary for me to properly perform services for Synthes during my employment

(*Id.* at 2-3.)

59.    Similarly, Sporer was required to return all DePuy Synthes property, including confidential information, at the time of his resignation:

> Upon termination of my employment, I will immediately return to Synthes all correspondence files, business card files, customer and prospect lists, price lists, product lists, software, manuals, technical data, forecasts, budgets, notes, electronically stored information or data, and other materials that contain any of this [confidential] information, and I will note retain copies of those materials.

(*Id.* at 3.)

60.    Sporer also agreed to a non-competition obligation such that, during his employment with DePuy Synthes and for a period of twelve (12) months after his last day of employment with DePuy Synthes, he would not:

> directly or indirectly, compete in [his] former Territory with Synthes' Business. This means that [he] will not work for or be involved in the Business of any Competitor of Synthes in a

25

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/20/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

> managerial, marketing, sales, technical, administrative, or product development capacity, whether as an owner, principal, partner, employee, consultant, contractor, agent or representative.

(Ex. B at 4.)

61.     The Sporer NCA goes on to define Territory as "the accounts to which [he] ha[s] been assigned or for which he had coverage responsibility within the last two years of [his] employment with Synthes" and Competitor as "any persons or entities who now, or in the future, manufacture, develop, sell, or intend to sell, technologies, products and services in the Business. Business is defined as "the business of developing, designing, manufacturing, and selling surgical, medical and veterinary implants, medical, biomaterial and endoscopic technologies, products and services in connection with osteosynthesis, musculoskeletal, maxillofacial and spine surgery, including, but not limited to, compression plates and screws, intermedullary nails, external fixation devices, percutaneous devices, cranio-facial implants, mandible implants, spinal implants and screws, surgical instruments, osteobiologic and disc replacement products, and minimally invasive and endoscopic products, as well as power instrument systems for neurosurgery, neurotology, spinal procedures, and otolaryngology," which it further acknowledges "encompasses a broad range of technologies, products and services that Synthes now provides and may in the future develop internally or obtain through acquisitions, merger, sub-contracting or otherwise."

62.     The Sporer NCA also contains a provision prohibiting contact with and solicitation or servicing of DePuy Synthes Customers during his employment with DePuy Synthes:

> I agree that, during my employment and for a period of twelve (12) months after my employment with Synthes terminates for any reason, voluntary or involuntary, I will not solicit, contact, or provide services to (or attempt to do any of the foregoing), directly

26

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

or indirectly, for the purpose or effect of competing or interfering with any part of Synthes' Business: (1) any Customer of Synthes within my assigned territory; (2) any Customer of Synthes that I contacted, solicited, received commissions on sales, to whom I provided coverage, or in any way supported or dealt with at any time during the last two years of my employment; (3) any prospective Customer of Synthes that I contacted, for whom I had coverage responsibility, or who received or requested a proposal or offer from me on behalf of Synthes at any time during the last two years of my employment; or (4) any existing or prospective Customer of Synthes for which I had any direct or indirect responsibility at any time during the last two years of my employment.

(Ex. B at p. 3.)

63. Sporer and Janofsky each agreed that the agreements were assignable and enforceable by affiliated entities who were named as express third-party beneficiaries. (*See generally* Ex. A at ¶ C(15); Ex. B at pp. 4-5 & 6.)

64. Both Janofsky and Sporer were aware that they had signed agreements with DePuy Synthes. Upon information and belief, Globus knew or should have known of Sporer's and Janofsky's contractual obligations to DePuy Synthes before and after they commenced employment with Globus and acted with reckless disregard of their contractual restrictions. Globus has inhibited compliance with those obligations in furtherance of its unlawful trauma business strategy, fully aware from its history of litigation with DePuy Synthes that DePuy Synthes maintains and enforces agreements with its sales employees containing restrictive covenants.

### Globus's Use of DePuy Synthes' Former Employees and Confidential Information to Identify and Target Other DePuy Synthes Employees for Recruitment and to Identify and Target DePuy Synthes' Customers for Conversion

65. As noted above, in addition to Gregoris, Globus has hired a number of former DePuy Synthes regional managers over the last year in strategic positions throughout the

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

country. According to Globus's CEO, Globus's hiring of management-level trauma employees was completed as of the Q3 2017 earnings call held on November 8, 2017.

66.    Globus has, upon information and belief, used that strategically selected group of former DePuy Synthes regional managers to identify, recruit, hire, and manage DePuy Synthes' sales consultants, to identify and recruit key DePuy Synthes' surgeon customers for consulting and sales opportunities with respect to Globus's trauma products, and to leverage the surgeons with whom Globus has partnered to then entice and pressure DePuy Synthes' sales personnel to join Globus. Globus's management has confirmed during the last two quarterly earnings calls that Globus is now "heavily ramping up the sales force at this point." Globus has also used and will continue to use those former DePuy Synthes sales consultants, and others in the pipeline, to identify key trauma surgeons for visits to Globus's headquarters and evaluations of Globus's products and for conversion of DePuy Synthes' trauma business with those Customers.

67.    As noted above, following discussions beginning no later than July 2017, Globus identified and recruited former DePuy Synthes sales consultants Sporer in Michigan and the trauma sales team at DePuy Synthes assigned to the Jersey shore area, consisting of Janofsky and Zimmerman. During Globus's months-long recruitment efforts and while planning for their business contributions to Globus, those individuals continued to enjoy access to DePuy Synthes' confidential information, Customer relationships, and good will and continued to benefit from DePuy Synthes' investments in specialized training.

68.    By late August 2017, Sporer had already completed a third version of a business plan prepared in anticipation of his employment with Globus. In that business plan, Sporer indicates that he will be working behind the scenes to facilitate the conversion of Customers for whom he had been directly responsible and in contact during his employment with DePuy

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Synthes, including during the first thirty days with Globus, during which time he plans to "schedule high priority surgeons to attend an HQ visit" at Globus's facilities, to "*[l]everage [his] network of surgeons in Michigan*" (emphasis added), and to "[n]etwork with my colleagues in [Globus] spine to develop leads" and "foster growth opportunities" in Globus's spine business as well.

69.     As he has begun his employment with Globus, Sporer's Globus business plan has been put into action.  Not continentally, one of the key surgeon customers for whom Sporer was responsible and in contact during his employment as a DePuy Synthes Sales Consultant is affiliated with one of the very accounts mentioned in Sporer's Globus business plan and, upon information and belief, is now working with Globus's trauma business.  Upon information and belief, Sporer has also remained in communication with staff from at least two accounts from his former DePuy Synthes territory, including a key hospital staff member who has recently been recruited by Globus for employment as a direct employee—diverting to Globus a DePuy Synthes hiring plan Sporer had developed in conjunction with his team during his employment with DePuy Synthes.

70.     Upon information and belief, Colonna, a former DePuy Synthes regional manager who resigned less than one year ago, has, upon information and belief, been engaged with former DePuy Synthes' employees, including Sporer, in connection with his role as a sales manager for Globus, despite his ongoing non-solicitation obligations to DePuy Synthes.

71.     Confirming Sporer's active involvement in implementing his August 2017 Globus business plan, just this week Sporer admitted to a former DePuy Synthes teammate that he had driven his Globus manager to various accounts in his former territory in order to interact with

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the
Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

customers face-to-face, including, without limitation, a visit to St. Joseph's during which Sporer himself was involved in at least one in-person conversation with hospital staff.

72.     Turning to its recruitment efforts in the Jersey Shore area, Globus's employment of Janofsky and Zimmerman has resulted in Janofsky's violations of his non-competition and Customer non-solicitation obligations to DePuy Synthes. Upon information and belief, Janofsky has been promoting Globus's competing trauma products to DePuy Synthes' Customers in his former territory and is actively seeking to convert their business. Janofsky has been directly observed by DePuy Synthes personnel covering surgeries at two different accounts within Janofsky's and Zimmerman's former DePuy Synthes team territory (Monmouth Medical Center and Riverview Medical Center) with two different DePuy Synthes surgeon customers. Janofsky has also been observed delivering surgical sets containing Globus's new trauma implants and instrumentation to at least two other facilities within his former territory (Toms River Surgery Center and Shrewsbury Surgery Center). And after attempting to convert a distal radius surgery at Shrewsbury Surgery Center in February 2018, Janofsky and Gaynor camped out in the lounge of the facility for a large portion of the day to speak with physicians in their effort to promote Globus's competing trauma products.

73.     Globus would not have been able to solicit or recruit the Sales Consultants, solicit these Customers, or convert business within these Customer accounts, without using and relying on the confidential information that DePuy Synthes' former employees received and developed on behalf of DePuy Synthes during their respective tenures with DePuy Synthes.

30

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the
Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## COUNT I
## BREACH OF CONTRACT
### (Against Janofsky and Sporer)

74.     DePuy Synthes incorporates and re-states the averments set forth in the preceding

paragraphs of this Complaint as though set forth herein and at length.

75.     The Janofsky NCA and the Sporer NCA are valid, enforceable agreements and

are each supported by adequate consideration under New Jersey and Pennsylvania law.

76.     Janofsky breached his agreement by failing to honor and provide the two weeks'

notice required in the Janofsky NCA.  Janofsky has also been directly observed by DePuy

Synthes personnel covering cases with DePuy Synthes' Customers at accounts within Janofsky's

and Zimmerman's former DePuy Synthes team territory, delivering surgical sets containing

Globus's new trauma implants and instrumentation to other facilities within that same territory,

and contacting physicians and staff that same territory in their effort to promote Globus's

competing trauma products.

77.     Janofsky's activities have violated the non-competition and Customer non-

solicitation obligations in his agreement with DePuy Synthes as well as his two weeks' notice

obligation and have caused substantial and irreparable harm to DePuy Synthes' business, and

Janofsky's continued employment with Globus in his former territory threatens further harm.

78.     By the end of August 2017, Sporer had already completed a third version of a

business plan prepared in anticipation of his employment with Globus.  In that business plan,

Sporer indicates that he will be working behind the scenes to facilitate the conversion of

Customers for whom he had been directly responsible and in contact during his employment with

DePuy Synthes, including during the first thirty days with Globus, during which time he plans to

"schedule high priority surgeons to attend an HQ visit" at Globus's facilities, to "[l]everage [his]

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

network of surgeons in Michigan, and to "[n]etwork with my colleagues in [Globus] spine to develop leads" and "foster growth opportunities" in Globus's spine business as well.

79. Whether intended for immediate conversion of business or future conversion of business, such activities constitute violations of Sporer's non-competition and Customer non-solicitation obligations to DePuy Synthes, at minimum. In addition, one of the key surgeon customers for whom Sporer was responsible and in contact during his employment at one of the very accounts mentioned in Sporer's Globus business plan, is, upon information and belief, now working with Globus's trauma business—a fact Sporer discussed with Globus and/or the surgeon during his employment with DePuy Synthes. Upon information and belief, Sporer has also remained in communication with staff from at least two accounts from his former DePuy Synthes territory, including a key hospital staff member who has recently been recruited by Globus for employment as a direct employee—diverting to Globus a DePuy Synthes hiring plan Sporer had developed in conjunction with his team during his employment with DePuy Synthes.

80. This conduct violates Sporer's obligations to DePuy Synthes and has caused substantial and irreparable harm to DePuy Synthes' business. Sporer's continued employment with Globus in his former territory and any efforts to support directly or indirectly the targeting, training, solicitation, or recruitment of Customers in that territory—whether or not assigned to him by Globus—threaten further harm.

81. In addition, Globus's employment of Sporer and Janofsky in their former DePuy Synthes territories or in a role in which they are directly or indirectly targeting Customers for courting by Globus, evaluation and training on Globus's competing trauma products, and sales necessarily will result in, and, upon information, has already resulted in, the use or disclosure of

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

confidential information accessible to them and entrusted to them during their employment with DePuy Synthes, all in violation of their contractual confidentiality obligations.

82.     The confidential information these employees learned while working for DePuy Synthes will be disclosed and used to benefit Globus, to inform and implement Globus's business strategy, and to exploit and convert the Customer relationships and good will entrusted to those individuals during their employment with DePuy Synthes.  As described above, this confidential information includes, without limitation, periodic and year-end sales data, performance rankings, sales by pathology and product line, special pricing arrangements and discounts, competitive responses, as well as information related to DePuy Synthes' research and development plans and strategy and sensitive discussions between DePuy Synthes and DePuy Synthes' Customers related to the development and rollout of new products and initiatives, the refinement of existing products, and the development of custom products.

83.     Janofsky's and Sporer's actual and/or prospective breaches of the NCAs have caused, and will continue to cause, immediate and irreparable harm to DePuy Synthes.

84.     DePuy Synthes has no adequate remedy at law to fully compensate it for the harm caused by the Janofsky's and Sporer's unlawful conduct and will continue to suffer substantial and immediate irreparable harm unless they are restrained.

85.     DePuy Synthes has fully complied with all of its obligations under the NCAs, and all conditions precedent to the relief requested herein have been performed, have occurred, or have been waived.

WHEREFORE, DePuy Synthes demands judgment in its favor and against the Defendants, and respectfully requests the following relief:

a.     Enforcement of the Sporer NCA and the Janofsky NCA;

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/20/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

b.   Interim and permanent injunctive relief prohibiting the Sales Consultants from violating the terms of their agreements with DePuy Synthes;

c.   Actual damages that DePuy Synthes is entitled to recover as a result of the breaches of the Sporer NCA and the Janofsky NCA;

d.   Incidental and consequential damages as permitted by law;

e.   The establishment of a constructive trust in favor of DePuy Synthes;

f.   Damages or disgorgement in the amount that the Defendants have been unjustly enriched as a result of the Sporer's and/or Janofsky's breaches of their respective contractual obligations to DePuy Synthes;

g.   An equitable accounting, disgorgement, forfeiture, and delivery to DePuy Synthes of all assets, income, profits, pecuniary benefits, and all illicitly obtained gains or profits resulting from Sporer's and Janofsky's breaches of the their respective contractual obligations to DePuy Synthes or from their possession or use of DePuy Synthes' resources;

h.   An equitable accounting, forfeiture, forensic analysis, and return of all DePuy Synthes' information, property, and product in the Defendants' possession, custody, or control;

i.   DePuy Synthes' attorney's fees and costs;

j.   Interest; and

k.   All such other relief as this Court deems appropriate.

34

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## COUNT II
## TORTIOUS INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONS
### (Against Globus)

86.     DePuy Synthes incorporates and re-states the averments set forth in the preceding paragraphs of this Complaint as though set forth herein and at length.

87.     Globus has tortiously interfered with DePuy Synthes' employees as well as its current and future business relationships.

88.     At the time Globus was recruiting Janofsky and Sporer, among other former DePuy Synthes employees, DePuy Synthes had existing contractual relationships with those employees. Globus knew or should have known about those contractual relationships and has acted in reckless disregard of their contractual obligations.

89.     At the times Globus was competing with DePuy Synthes and soliciting its trauma Customers, DePuy Synthes has had existing contractual relationships with those Customers, and Globus knew or should have known about these contractual relationships.

90.     Globus has tortiously interfered with DePuy Synthes' contractual relationships with its employees by inducing former DePuy Synthes employees' breach of their contractual obligations. Specifically, upon information and belief, Globus has induced, encouraged, and supported former DePuy Synthes' employees in breaching their agreements with DePuy Synthes by:

- soliciting DePuy Synthes' employees for roles and responsibilities that violate the employees' non-solicitation and non-competition obligations, at minimum;

- working with and/or through former DePuy Synthes employees, including, without limitation, former DePuy Synthes regional managers, to solicit additional DePuy Synthes employees for positions with Globus, including, without limitation, through the use DePuy Synthes' confidential information to identify, solicit, and compensate recruits;

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

- working with and/or through former DePuy Synthes employees to plan and/or coordinate sales activities in those former employees' DePuy Synthes territories and/or sales activities involving Customers for which those former employees have confidential information;

- traveling with former DePuy Synthes employees to meet with Customers in those former employees' DePuy Synthes territories;

- working with and/or through former DePuy Synthes employees to plan and to coordinate the recruitment of staff employed by or affiliated with Customers that were in those former employees' DePuy Synthes territories and about whom those former employees have confidential information, including, without limitation, knowledge of DePuy Synthes' own business strategies with respect to the recruitment or potential recruitment of Customer staff.

91.     Globus has tortiously interfered with DePuy Synthes' business relationships with its Customers by inducing those Customers either to curtail or to cease doing business with DePuy Synthes and by working with and/or through former DePuy Synthes employees to plan and to coordinate the recruitment of staff employed by or affiliated with Customers that were in those former employees' DePuy Synthes territories and about whom those former employees have confidential information, including, without limitation, knowledge of DePuy Synthes' own business strategies with respect to the recruitment or potential recruitment of Customer staff.

92.     Throughout all of Globus's tortious conduct, Globus has acted without privilege or justification in interfering with DePuy Synthes' contractual and business relationships.

93.     Globus's interference with DePuy Synthes' contractual and business relationships has been purposeful, willful, and wanton and has been carried out with a specific intent to injure DePuy Synthes in the conduct of its business.

94.     DePuy Synthes has suffered, and will continue to suffer, substantial and irreparable damage as a result of Globus's tortious conduct and the resulting breaches of contract and interference with business relationships.

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

WHEREFORE, DePuy Synthes demands judgment in its favor and against Globus, and respectfully request the following relief:

a.     Actual damages that DePuy Synthes is entitled to recover as a result of Globus's tortious interference;

b.     Incidental and consequential damages as permitted by law;

c.     For punitive damages to punish Globus for its willful and malicious conduct in tortiously interfering with DePuy Synthes' contractual and prospective business relationships;

d.     The establishment of a constructive trust in favor of DePuy Synthes;

e.     Damages or disgorgement in the amount that Globus has been unjustly enriched as a result of Globus's tortious conduct;

f.     An equitable accounting, disgorgement, forfeiture, forensic analysis, and return of all DePuy Synthes' information, property, and product in Globus's possession, custody, and control;

g.     Injunctive relief;

h.     DePuy Synthes' attorney's fees and costs;

i.     Interest; and

j.     All such other relief as this Courts deems appropriate.

### COUNT III
### UNFAIR COMPETITION
### (Against Defendants)

95.     DePuy Synthes incorporates and re-states the averments set forth in the preceding paragraphs of this Complaint as though set forth herein and at length.

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

96.     The foregoing conduct of Globus, including the actions of those former DePuy Synthes trauma management and sales consultants recruited and now employed by Globus, constitutes unfair competition, including, without limitation:

- trading off of the goodwill and reputation of Gregoris by continuing to hold him out to the investor and Customer community as the head of Globus's new trauma division, despite his having been enjoined from taking that position and in contravention of the federal court's injunction order;

- hiring DePuy Synthes' regional managers, including, without limitation Gaynor and Colonna, and using them (i) to identify, recruit, hire, and then manage DePuy Synthes' sales consultants; (ii) to identify and recruit key DePuy Synthes' surgeon customers for consulting and sales opportunities with respect to Globus's trauma products; and (iii) to leverage the surgeons with whom Globus has partnered to then entice and pressure DePuy Synthes' sales personnel to join Globus;

- recruiting and hiring DePuy Synthes' sales consultants to identify key trauma surgeons for visits to Globus's headquarters and evaluations of Globus's products and for conversion of DePuy Synthes' trauma business with those Customers, including, but not limited to, Janofsky and Sporer;

- condoning, encouraging, and inducing breaches of contractual obligations owed by former DePuy Synthes' employees, including, without limitation, Janofsky and Sporer, and interference with DePuy Synthes' Customer relationships;

- working with and/or through former DePuy Synthes employees to plan and/or coordinate sales activities in those former employees' DePuy Synthes territories and/or sales activities involving Customers for which those former employees have confidential information;

- working with and/or through former DePuy Synthes employees to plan and to coordinate the recruitment of staff employed by or affiliated with Customers that were in those former employees' DePuy Synthes territories and about those former employees have confidential information, including, without limitation, knowledge of DePuy Synthes' own business strategies with respect to the recruitment or potential recruitment of Customer staff; and

- aiming, through the large number of former DePuy Synthes employees already employed by Globus and the mass of 80 DePuy Synthes employees Globus has expressed its intent to hire, to extract and convert the confidential, competitively valuable information necessary to inform and implement Globus's business strategy and to exploit and convert the specialized training, Customer relationships, and good will entrusted to those individuals during their employment with DePuy Synthes.

38

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

97.     In addition to constituting a violation of their NCAs with DePuy Synthes, or, in the alternative under Pennsylvania Rule of Civil Procedure 1020(c) to the extent not fully encompassed with each of their NCAs, Janofsky's and Sporer's conduct constitutes unfair competition.

98.     Unfairly competing with DePuy Synthes, the Defendants have engaged in a pattern of activity that evidences that they, and more specifically Globus, have enjoyed and will continue to enjoy advantages that are not available to legitimate competitors in the highly competitive trauma market.

99.     As a direct and proximate result of Globus's and Sporer's and Janofsky's wrongful conduct, as described, DePuy Synthes has sustained and will continue to sustain immediate and irreparable harm and injury for which it has no adequate remedy at law.

100.    In addition to the irreparable injury described above, as a direct and proximate result of Globus's and Janofsky's and Sporer's wrongful conduct, DePuy Synthes has suffered and/or will suffer actual and/or consequential damages including loss of goodwill and business relations and loss of competitive business advantage, opportunity and expectancy, all to an extent and in an amount to be proven at trial.

WHEREFORE, DePuy Synthes demands judgment in its favor and against the Defendants, and respectfully requests the following relief:

a.      Actual damages that DePuy Synthes is entitled to recover as a result of the Defendant's unfair competition with DePuy Synthes;

b.      Incidental and consequential damages as permitted by law;

c.      For punitive damages to punish the Defendants for their willful and malicious conduct in unfairly competing with DePuy Synthes;

39

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

d.   The establishment of a constructive trust in favor of DePuy Synthes;

e.   Damages or disgorgement in the amount that each of the Defendants has been unjustly enriched as a result of their unfair competition;

f.   An equitable accounting, disgorgement, forfeiture, and delivery to DePuy Synthes of all assets, income, profits, pecuniary benefits, and all illicitly obtained gains or profits resulting from the Defendants' unfair competition;

g.   Injunctive relief;

h.   DePuy Synthes' attorney's fees and costs;

i.   Interest; and

j.   All such other relief as this Courts deems appropriate.

Dated: March 2, 2018

Respectfully submitted,

BLANK ROME LLP

/s/ Anthony B Haller

Anthony B. Haller (Pa. I.D. No. 37017)
Leigh Ann Buziak (Pa. I.D. No. 93949)
Kevin M. Passerini (Pa. I.D. No. 203169)
One Logan Square
Philadelphia, PA 19103
Tel.:  (215) 569-5690 / 5386 / 5466
Fax:  (215) 832-5690 / 5386 / 5466
haller@blankrome.com
lbuziak@blankrome.com
passerini@blankrome.com

*Attorneys for Plaintiff DePuy Synthes Sales, Inc.*

40

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the
Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## **VERIFICATION**

I, Ken Carpenter, hereby state that I am the Vice President of Sales, North Region, for

DePuy Synthes; that I am authorized to make this verification on behalf of Plaintiff in the foregoing

action; that I have personal knowledge of the statements made in the foregoing Complaint; and

that the statements made in Plaintiff's Complaint are true and correct to the best of my knowledge,

information, and belief.

I understand that the statements in this Verification are made subject to the penalties of 18

P.S. § 4904 relating to unsworn falsifications to authorities.


Dated: March 2 , 2018

Ken Carpenter
_____
KEN CARPENTER

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**EXHIBIT "A"**

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| | |
|---|---|
| **From:** | Alofs, Mark [ETHUS] |
| **To:** | Janofsky, Gregory [SYNNA] |
| **Cc:** | Doorly, Christine [SYNNA] |
| **Subject:** | Fwd: ACTION REQUIRED: Promotional Non Competition and Non-Solicitation Agreement Signature Required for Greg Janofsky |
| **Date:** | Wednesday, March 16, 2016 2:36:20 PM |
| **Attachments:** | EMPLOYEE SECRECY, INTELLECTUAL PROPERTY, NON-COMPETITION AGREEMENT.pdf ATT00001.htm |

Greg,
Please read and sign non compete and send back to Chrissy Doorly
Thx
Sent from my iPhone

Begin forwarded message:

From: "Doorly, Christine [SYNNA]" <CDOORLY@ITS.JNJ.COM>
Date: March 16, 2016 at 2:32:34 PM EDT
To: "Alofs, Mark [SYNNA]" <MALOFS@ITS.JNJ.COM>
Cc: "Doorly, Christine [SYNNA]" <CDOORLY@ITS.JNJ.COM>
Subject: ACTION REQUIRED: Promotional Non Competition and Non-Solicitation Agreement Signature Required for Greg Janofsky

IMMEDIATE ACTION REQUIRED: Note, failure to return will result in promotion not being processed

Dear Mark,

You recently initiated a promotion for Greg Janofsky.

This promotion offer is contingent upon signature of the Employee Secrecy, Intellectual Property, Non Competition and Non-Solicitation Agreement. Please immediately have your employee sign and return the Company's Employee Secrecy, Intellectual Property, Non Competition and Non-Solicitation Agreement.

This promotion offer and subsequent employment are contingent upon your employee accurately completing and submitting all requested information and agreeing to and meeting all necessary requirements for employment.

In order to finalize the promotion you will need to provide your employee with a copy of the attached Employee Secrecy, Intellectual Property, Non Competition and Non-Solicitation Agreement . Once we receive the sign copy back we will process the promotion.

Please return signed agreement to Chrissy Doorly cdoorly@its.jnj.com .

Thank you.

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the
Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**◉ DePuy Synthes**
Companies of Johnson & Johnson

# EMPLOYEE SECRECY, INTELLECTUAL PROPERTY, NON-COMPETITION AND NON-SOLICITATION AGREEMENT

Name of Employee: _____

Residence Address: _____

## A. Introduction

DePuy Synthes is one of numerous entities within the Johnson & Johnson Family of Companies. The businesses in which these entities are engaged are extremely competitive. During your employment, you will be given access to CONFIDENTIAL INFORMATION (as defined below) and training relating to the business of DePuy Synthes and may have access to CONFIDENTIAL INFORMATION relating to the business of other entities within the Johnson & Johnson Family of Companies. This Employee Secrecy, Intellectual Property, Non-Competition and Non-Solicitation Agreement (this "Agreement") also applies to any employment you may subsequently have with any other Johnson & Johnson company.

Because your receipt of CONFIDENTIAL INFORMATION will assist you in performing your work effectively and because the secrecy of CONFIDENTIAL INFORMATION is very important for competitive and other reasons, you are expected to preserve its confidentiality, to refrain from competing with Johnson & Johnson companies while employed by DePuy Synthes or any other Johnson & Johnson company, and, with certain limitations, to refrain for eighteen (18) months after your employment ends from competing with any Johnson & Johnson company whose CONFIDENTIAL INFORMATION you had access to during your employment. To formalize these expectations, this Agreement sets forth certain confidentiality, non-competition and non-solicitation obligations you have to DePuy Synthes and to any other Johnson & Johnson company by which you may be employed at a later date or to whose CONFIDENTIAL INFORMATION you are given access while employed by DePuy Synthes or any other Johnson & Johnson company. This Agreement also defines certain rights and obligations concerning intellectual property, non-solicitation-of-business, non-solicitation of employees and publicity.

## B. Definitions

As used in this Agreement:

**COMPANIES** means, collectively DEPUY SYNTHES, Johnson & Johnson, and all other entities that are at least 50 percent owned by Johnson & Johnson, either directly or indirectly, and their respective successors and assigns.

**COMPANY** means any of the COMPANIES.

**EMPLOYER** means DEPUY SYNTHES or, if applicable, any other entity within the COMPANIES by which you are (or were) employed at any time. For purposes of Paragraphs 9, 10, and 11 of this Agreement that concern your rights and obligations after you are no longer employed by any COMPANY, EMPLOYER means the COMPANY by which you were last employed.

February 2012

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**INVENTIONS** means discoveries, improvements and ideas, whether or not patentable, that relate to any work assigned to or performed by you for or on behalf of any COMPANY or to the actual or anticipated research or development or other business activities of any COMPANY.

**CONFIDENTIAL INFORMATION** means information about the business of any COMPANY, not generally known to the trade or industry in which the COMPANY is engaged, which is disclosed to you or known by you as a result of your employment by any COMPANY. CONFIDENTIAL INFORMATION includes, but is not limited to, (a) information that the COMPANY keeps confidential from competitors concerning such things as inventions, research, development, strategies, operations, logistics, manufacturing, distribution, purchasing, licensing, business planning and development, finance, computer software or hardware, automated systems, engineering, marketing, merchandising, selling, sales, personnel, customers or clients, including, but not limited to, sales volumes or strategies, number or location of sales representatives, names or significance of a COMPANY's customers or clients or their employees or representatives, preferences, needs or requirements, purchasing histories, or other customer or client-specific information; and (b) personal or business information about any COMPANY's employees, customers, vendors, consultants and agents which is not publicly known and is disclosed to you or known by you in connection with your employment by any COMPANY.

**COMPETITOR** means any person or entity outside the COMPANIES (a) that is engaged in or preparing to become engaged in research, development, production, marketing, selling of, or consulting on a product, process, technology, machine, invention or service in existence or under development that resembles or competes with an existing or potential product, process, technology, machine, invention, or service of any COMPANY or (b) that could benefit from CONFIDENTIAL INFORMATION.

## C. Rights and Obligations

In consideration of your receipt of CONFIDENTIAL INFORMATION and company-specific training, your employment or the continuation of your employment with any EMPLOYER, and other benefits being provided to you in connection with this Agreement, you agree as follows:

1. You will disclose promptly in writing to your EMPLOYER or its designee all INVENTIONS conceived or made by you during your employment whether or not during your hours of employment or with the use of any COMPANY's facilities, materials or personnel, either solely or jointly with another or with others, and related to the actual or anticipated business or activities of any COMPANY, or related to their actual or anticipated research and development or suggested by or resulting from any task assigned by you or work performed by you for, or on behalf of, any COMPANY. Except as otherwise provided in Paragraphs 19, 20 and 21 of this Agreement, you assign and agree to assign your entire right, title and interest in all INVENTIONS to your EMPLOYER or its designee. You will not assert any rights to any INVENTIONS as having been made or acquired by you prior to your being employed by your EMPLOYER unless such INVENTIONS are identified on a sheet attached hereto and signed by you and your EMPLOYER as of the date of this Agreement.

2. All works, including, but not limited to, reports, computer programs, drawings, documentation and publications, that you create or prepare during and within the scope of your employment with your EMPLOYER shall be considered works made for hire, and the worldwide copyrights therein shall be the sole and exclusive property of your EMPLOYER. If any such copyrightable work or portion thereof shall not legally qualify as a work made for hire, or shall subsequently be held not to be a work made for hire, you assign and hereby agree to assign to your EMPLOYER or its designee all

- 2 -

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

your right, title and interest therein.   You agree to promptly disclose all such works to your EMPLOYER.

3. You will execute any applications, assignments or other instruments that your EMPLOYER considers necessary to apply for and obtain Letters Patent or trademark or copyright registrations to protect the interests of any COMPANY with respect to INVENTIONS, trademarks and copyrightable works conceived, created, authorized or made by you during your employment. These obligations shall continue beyond the termination of your employment and shall be binding upon your executors, administrators and other legal representatives.

4. You will not use or disclose to any COMPANY any confidential information belonging to others, including your former employers, if any.   You represent there is no agreement, contract, non-compete covenant, non-disclosure/secrecy agreement or similar restriction that would prohibit or restrict your ability to perform your job-related duties that you have not disclosed and provided to your EMPLOYER.

5. Except as required by your duties for your EMPLOYER, you will not use, disclose, disseminate, lecture upon or publish any CONFIDENTIAL INFORMATION, either during your employment with your EMPLOYER or thereafter, unless you first obtain the prior written consent of any COMPANY to which the CONFIDENTIAL INFORMATION relates.

6. Except as provided in the next sentence or to any extent prohibited by applicable law, during your employment with any COMPANY and for a period of eighteen (18) months after your last date of employment within the COMPANIES, you will not, directly or indirectly, perform work for any COMPETITOR in any position and in any location in which you could disadvantage any COMPANY or advantage the COMPETITOR by your disclosure or use of CONFIDENTIAL INFORMATION to which you had access. Following the termination of your employment, you will be permitted to work for an entity or person if (a) the COMPANY with a competitive interest determines that the entity or person for which you wish to work has a diversified business and no portion of the business for which you have indicated that you would render services is a COMPETITOR, and (b) prior to your commencing any work, such entity or person and you each provides written assurance satisfactory to the COMPANY with a competitive interest that you will not render any services for the portion of the business that is a COMPETITOR for a period of eighteen (18) months after your last date of employment within the COMPANIES. The restrictions of this paragraph will not apply with respect to services you render in California after termination of your employment within the COMPANIES.

7. To avoid disadvantaging your EMPLOYER or any other COMPANY through your use of relationships you gained, maintained, or enhanced through your employment with any COMPANY, you will not, during your employment with any COMPANY or for eighteen (18) months after your last date of employment within the COMPANIES, directly or indirectly, solicit any business from, sell to, or render any service to any accounts, customers or clients with which you have had contact during the last twelve (12) months of your employment within the COMPANIES in connection with the sale of any product or service that resembles or competes with one that is being (or is being prepared to be) sold, developed or acquired by any COMPANY for which you worked during the last twelve (12) months of your employment. The restrictions of this paragraph will not apply to limit your activities for any COMPANY while you are employed within the COMPANIES or to services you render in California after termination of your employment that do not involve your use or disclosure of CONFIDENTIAL INFORMATION.

8. Except to any extent prohibited by applicable law, you agree that for a period of twelve (12) months after your last date of employment within the COMPANIES, you will not, directly or

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

indirectly, solicit or hire on your own behalf, or on behalf of others, any individual employed by any COMPANY with whom you have worked or who became known to you as a result of your employment within the COMPANIES. The restrictions of this paragraph will not apply to limit your activities for any COMPANY while you are employed within the COMPANIES or to services you render in California after termination of your employment that do not involve your use or disclosure of CONFIDENTIAL INFORMATION.

9. For purposes of enabling your EMPLOYER and any other COMPANY with a competitive interest to monitor your compliance with your obligations under this Agreement, you will notify your EMPLOYER in writing, both at the time you give notice that you will be terminating your employment within the COMPANIES and whenever within the eighteen (18)-month period following the termination of such employment you plan to commence work with a new entity or person of: the identity of each entity or person for which you will be working, your new title, and the responsibilities of the position. During this time period you will also provide such notice as to any planned changes in your work responsibilities. You will provide the notices required under this paragraph to the highest-ranking employee in the Human Resources organization of your EMPLOYER and will do so promptly, and, in any event, at least two (2) weeks prior to commencing any new position or (if applicable) new responsibilities. You will promptly provide any additional information requested by your EMPLOYER that is reasonably related to the purposes of this paragraph. The information you provide pursuant to this paragraph should not include any confidential information belonging to anyone outside the COMPANIES and will not be used except to evaluate your compliance with your obligations under this Agreement, to enforce those obligations, and to seek remedies for your breach or another party's interference with your obligations under this Agreement.

10. If, after the termination of your employment within the COMPANIES, you are unable to obtain employment consistent with your education and experience in a position in which your Gross Monthly Pay (as defined below, "GMP") is at least equal to your GMP at the time of such termination solely because the restrictions set forth in Paragraphs 6 or 7 of this Agreement, then any such restriction that caused you to be unable to obtain such employment shall bind you only as long as your EMPLOYER, commencing after you provide written notice pursuant to Paragraph 9, makes monthly payment to you equal to the lesser of (a) the amount you last received from your EMPLOYER as GMP or (b) the difference between your last GMP at your EMPLOYER and your GMP in any subsequent position. Gross Monthly Pay shall consist of the sum of the following applicable amounts, prorated to a monthly basis: your annual base pay, annual commissions, year-end cash bonus, and the monetary value of your year-end stock award (but not any stock option grants, restricted stock units, Certificates of Extra Compensation or other extra compensation, long-term compensation or benefits). Your GMP at your EMPLOYER will be based on the amounts you actually received during the last twelve (12) calendar months you were employed. Your GMP in any subsequent work will be based on your EMPLOYER's reasonable projection of the amounts to be received by you during the first twelve (12) months in that employment.

11. To qualify for the payments provided for in Paragraph 10 above for each month that you claim payment is due, you must represent in writing to the Vice President of Human Resources of your EMPLOYER, within fifteen (15) days following the end of the month, that although you diligently sought work consistent with your education and experience, you were unable to attain such employment in a position in which your GMP equaled the GMP you last received from your EMPLOYER, solely because of a restriction set forth in Paragraphs 6 or 7 above. You must also promptly submit such further information as your EMPLOYER may request to verify the accuracy of your representation.

- 4 -

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

12. If your EMPLOYER gives you a written release from the restriction of Paragraphs 6 or 7 above that has been the sole cause of your inability to obtain employment consistent with your education and experience in which your GMP equals at least the GMP you last received from your EMPLOYER, then your EMPLOYER will no longer be obligated to make the payments contemplated by Paragraph 10 above.

13. Upon termination of your employment with your EMPLOYER, you will turn over to an individual designated by your EMPLOYER all property in your possession or custody belonging to your EMPLOYER or any other COMPANY, including any computer equipment. You shall not retain copies of any correspondence, memoranda, reports, notebooks, drawings, photograph, or other documents in any form whatsoever (including information contained in computer memory or on any computer disk) relating in any way to the affairs of your EMPLOYER or any other COMPANY that were entrusted to or obtained by you at any time during your employment with any COMPANY.

14. You acknowledge that if you violate or are about to violate this Agreement by disclosing or using information prohibited by Paragraph 5 above, by engaging in conduct prohibited by Paragraphs 6, 7 or 8 above, or by failing to turn over property as required by Paragraph 13 above, immediate irreparable injury to one or more of the COMPANIES will result, warranting (in addition to any other relief) the imposition of injunctive relief against you.

15. Your EMPLOYER may assign this Agreement and all of its rights and obligations. Each COMPANY is an express third-party beneficiary of this Agreement.

16. Nothing in this Agreement shall affect any common law duties you have to any COMPANY, including, but not limited to, your duty of loyalty.

17. This Agreement will be governed by and interpreted according to the laws of the State of New Jersey, without regard to its conflict of law rules. Any action relating to or arising out of this Agreement may be brought in the courts of the State of New Jersey or, if subject matter jurisdiction exists, in the United States District Court for the District of New Jersey. You consent to personal jurisdiction and venue in both such courts and to service of process by United States mail or express courier service in any such action.

18. In the event that any provision of this Agreement is invalidated or unenforceable under applicable law, that shall not affect the validity or enforceability of the remaining provisions. To the extent that any provision of this Agreement is unenforceable because it is overbroad, that provision shall be limited to the extent required by applicable law and enforced as so limited.

19. The following applies only to a Minnesota employee: Paragraph 1 does not apply to an INVENTION for which no equipment, supplies, facility, or trade secret information of any COMPANY was used to conceive or reduce to practice such INVENTION and which was developed entirely by you on your own time, and (a) which does not relate at the time of conception or reduction to practice of the INVENTION (i) to the business of your EMPLOYER or (ii) to your EMPLOYER's actual or demonstrably anticipated research or development, or (b) which does not result from any work performed by you for your EMPLOYER.

20. The following applies only to a California, Delaware, Illinois, Kansas, or North Carolina employee: Paragraph 1 above does not apply to an INVENTION for which no equipment, supplies, facility, or trade secret information of any COMPANY was used and that was developed entirely on your own time, unless (a) the INVENTION relates at the time of conception or reduction to practice of the INVENTION (i) to the business of your EMPLOYER or (ii) to your EMPLOYER's actual or demonstrably anticipated research or development, or (b) the INVENTION results from any work performed by you for your EMPLOYER. For California

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

employees, the requirement to assign your rights in an invention to your EMPLOYER does not apply to an invention which qualifies fully under the provisions of California Labor Code Section 2870.

21. The following applies only to a State of Washington employee:  Paragraph 1 above does not apply to an INVENTION for which no equipment, supplies, facility, or trade secret information of any COMPANY was used and that was developed entirely on your own time, unless (a) the INVENTION relates at the time of conception or reduction to practice of the INVENTION (i) directly to the business of your EMPLOYER or (ii) to your EMPLOYER's actual or demonstrably anticipated research or development, and (b) the INVENTION results from any work performed by you for your EMPLOYER.

22. Nothing contained in this Agreement shall be deemed to confer on you any rights with respect to the duration of your employment.  YOUR EMPLOYMENT IS TERMINABLE AT WILL BY EITHER YOUR EMPLOYER OR YOU, WITH OR WITHOUT CAUSE, EXCEPT THAT IF YOU INITIATE THE TERMINATION, THERE SHALL BE, AT YOUR EMPLOYER'S OPTION, A PERIOD OF UP TO FOURTEEN (14) DAYS AFTER YOU GIVE WRITTEN NOTICE OF TERMINATION BEFORE THE TERMINATION BECOMES EFFECTIVE.  If your EMPLOYER elects to continue your employment during the notice period, it shall advise you of that fact and of the duration of the notice period.  During any notice period, you will provide such transitional services as your EMPLOYER may request.  Your EMPLOYER will be obligated to continue your pay during the notice period, and your duty of loyalty to your EMPLOYER will continue through such period.

This Agreement sets forth the entire agreement between the parties relating to its subject matter and supersedes all prior agreements, written or oral, between them.  No modification of or amendment to this Agreement will be effective unless it is in writing and signed by you and an authorized representative of your EMPLOYER.  You represent that you have not relied on any representations by any representative of any COMPANY concerning the subject matter of this Agreement that are not expressly stated in this Agreement.

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

YOU ACKNOWLEDGE HAVING READ, EXECUTED AND RECEIVED A COPY OF THIS AGREEMENT, AND YOU AGREE TO THE TERMS ABOVE.

DATE: _____

_____
EMPLOYEE'S SIGNATURE

_____
Name

_____
Address

_____
City/State

**DEPUY SYNTHES**

DATE: _____

_____
Signature of Authorized Company Agent

Print Name:_____

Title:_____

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| From: | Janofsky, Gregory [SYNNA] |
| To: | Doorly, Christine [SYNNA] |
| Cc: | Alofs, Mark [ETHUS] |
| Subject: | Employment Secrecy Agreement |
| Date: | Wednesday, March 16, 2016 8:57:21 PM |
| Attachments: | agreement 1.pdf |
| | agreement.pdf |

Chrissy,
Attached is the signed Employee Secrecy, Intellectual Property, Non Competition and Non-Solicitation Agreement.

Thanks,

Greg Janofsky
Depuy Synthes Trauma
732-501-6638

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**① DePuy Synthes**
COMPANIES OF Johnson-Johnson

## EMPLOYEE SECRECY, INTELLECTUAL PROPERTY, NON-COMPETITION AND NON-SOLICITATION AGREEMENT

Name of Employee:   *Gregory Janosky*

Residence Address:   *36 Milford Rd Jackson, NJ*

### A.  Introduction

DePuy Synthes is one of numerous entities within the Johnson & Johnson Family of Companies.  The businesses in which these entities are engaged are extremely competitive.  During your employment, you will be given access to CONFIDENTIAL INFORMATION (as defined below) and training relating to the business of DePuy Synthes and may have access to CONFIDENTIAL INFORMATION relating to the business of other entities within the Johnson & Johnson Family of Companies.   This Employee Secrecy, Intellectual Property, Non-Competition and Non-Solicitation Agreement (this "Agreement") also applies to any employment you may subsequently have with any other Johnson & Johnson company.

Because your receipt of CONFIDENTIAL INFORMATION will assist you in performing your work effectively and because the secrecy of CONFIDENTIAL INFORMATION is very important for competitive and other reasons, you are expected to preserve its confidentiality, to refrain from competing with Johnson & Johnson companies while employed by DePuy Synthes or any other Johnson & Johnson company, and, with certain limitations, to refrain for eighteen (18) months after your employment ends from competing with any Johnson & Johnson company whose CONFIDENTIAL INFORMATION you had access to during your employment.  To formalize these expectations, this Agreement sets forth certain confidentiality, non-competition and non-solicitation obligations you have to DePuy Synthes and to any other Johnson & Johnson company by which you may be employed at a later date or to whose CONFIDENTIAL INFORMATION you are given access while employed by DePuy Synthes or any other Johnson & Johnson company.   This Agreement also defines certain rights and obligations concerning intellectual property, non-solicitation-of-business, non-solicitation of employees and publicity.

### B.  Definitions

As used in this Agreement:

**COMPANIES** means, collectively DEPUY SYNTHES, Johnson & Johnson, and all other entities that are at least 50 percent owned by Johnson & Johnson, either directly or indirectly, and their respective successors and assigns.

**COMPANY** means any of the COMPANIES.

**EMPLOYER** means DEPUY SYNTHES or, if applicable, any other entity within the COMPANIES by which you are (or were) employed at any time. For purposes of Paragraphs 9, 10, and 11 of this Agreement that concern your rights and obligations after you are no longer employed by any COMPANY, EMPLOYER means the COMPANY by which you were last employed.

February 2012

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

YOU ACKNOWLEDGE HAVING READ, EXECUTED AND RECEIVED A COPY OF THIS AGREEMENT, AND YOU AGREE TO THE TERMS ABOVE.

DATE: _03/16/20116_

EMPLOYEE'S SIGNATURE

_Gregory   Janobky_
Name

_36 Millpond Rd_
Address

_Jackson   NJ_
City/State

DEPUY SYNTHES

DATE: _____

_____
Signature of Authorized Company Agent

Print Name:_____

Title:_____

- 7 -

Case# 2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**EXHIBIT "B"**

**⊛ SYNTHES**

2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial 1 of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

SALES CONSULTANT INTERN

<u>CONFIDENTIALITY, NON-SOLICITATION AND NON-COMPETITION AGREEMENT</u>

In consideration of the commencement of my employment as a Sales Consultant Intern with Synthes USA Sales, LLC, and the other consideration as described in more detail below, the receipt and sufficiency of which I hereby acknowledge, I state and agree as follows:

<u>ACKNOWLEDGMENTS:</u>

I acknowledge that: (1) Synthes USA Sales, LLC, its members, and its and their parents, affiliates, subsidiaries, divisions, and related companies or entities, and their respective predecessors, successors and assigns, now existing or hereafter created, including but not limited to Synthes, Inc., Synthes USA HQ, Inc., Synthes USA Products, LLC, Synthes USA, LLC and The Anspach Effort, Inc. (collectively referred to herein as "Synthes"), are engaged in the business of developing, designing, manufacturing, and selling surgical, medical and veterinary implants, medical, biomaterial and endoscopic technologies, products and services in connection with osteosynthesis, musculoskeletal, maxillofacial and spine surgery, including, but not limited to, compression plates and screws, intermedullary nails, external fixation devices, percutaneous devices, cranio-facial implants, mandible implants, spinal implants and screws, surgical instruments, osteobiologic and disc replacement products, and minimally invasive and endoscopic products, as well as power instrument systems for neurosurgery, neurotology, spinal procedures, and otolaryngology (the "Business"); (2) the Business encompasses a broad range of technologies, products and services that Synthes now provides and may in the future develop internally or obtain through acquisitions, merger, sub-contracting or otherwise; (3) Synthes is in a highly competitive industry; (4) Synthes invests substantial time, money, and effort on an ongoing basis, to train its employees with specialized skills and knowledge unique to Synthes and its Business, to develop technologies, products and services for the Business, to develop and maintain a proprietary data base of prospects, to maintain and expand its customer base, and to improve and develop its technologies, products and services; (5) from the outset of and during my employment with Synthes, I will have access to, receive, learn, develop and/or conceive technical, customer, prospect, financial or other information that is proprietary and/or confidential to Synthes; (6) this information must be kept in strict confidence to

2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

protect Synthes' Business and maintain its competitive position in the marketplace, and this information would be useful to Synthes' existing and potential competitors for indefinite periods of time; (7) from the outset of and during my employment with Synthes, I will have access to and will be required to maintain, develop and initiate customer relationships and goodwill that are valuable to Synthes and which it has a legitimate interest in protecting; (8) Synthes would be irreparably harmed by my subsequent work with, for or as a competitor of Synthes, in a managerial, marketing, sales, technical, administrative, or product development capacity, due to the possibility that there would be inadvertent or other disclosures of Synthes' proprietary and/or confidential information or that there would be improper interference with its valuable customer relationships and goodwill; (9) I acknowledge that the commencement of my employment with Synthes is adequate consideration for signing this agreement and that, as further consideration for this agreement and the restrictions contained herein, I acknowledge that I have been given access to confidential, proprietary and trade secret information of Synthes; and (10) the restrictions in this agreement are reasonable and necessary to protect Synthes' legitimate business interests.

CONFIDENTIALITY:

I understand that Synthes' proprietary, confidential and trade secret information includes (without limitation): (1) customer lists, customer preferences and customer usage history; (2) prices, renewal dates and other detailed terms of customer and supplier contracts and proposals; (3) pricing policies, methods of delivering services and products, marketing and sales strategies, product know-how, product technology and product development strategies; (4) physical security systems, access control systems, network and other equipment designs; (5) employment and payroll records; (6) forecasts, budgets and other non-public financial information; (7) product performance information, product technical information, product know-how, inventions (whether or not reduced to practice), discoveries, methodologies, algorithms, formulas, protocols, reports, data, results, observations, computer programs, patent applications, strategic plans, hypotheses, research directions, developments, improvements, drawings, designs, specifications, opinions of legal counsel, and draft or final regulatory filings; and (8) expansion plans, management policies and other business strategies and policies.  In exchange for my being provided access to such information, I agree that, at all times during and after my employment with Synthes, I will not disclose or

2

2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial 1 of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

communicate any of this information to any competitor or other third party, or use or refer to any of this information for any purpose, including but not limited to in the course of future employment for myself or any entity other than Synthes, or remove materials containing any of this information from Synthes' premises, except as necessary for me to properly perform services for Synthes during my employment. Upon termination of my employment, I will immediately return to Synthes all correspondence files, business card files, customer and prospect lists, price lists, product lists, software, manuals, technical data, forecasts, budgets, notes, electronically stored information or data, and other materials that contain any of this information, and I will not retain any copies of those materials. I understand that these provisions apply even to information of this type that is developed or conceived by me, alone or with others, at Synthes' instruction or otherwise. I also understand that these provisions apply to all information I may receive that is confidential and/or proprietary to any customer or other person or entity who does business with Synthes.

<u>NO CONTACT WITH OR SOLICITATION OF CUSTOMERS & PROSPECTS</u>:

I agree that, during my employment and for a period of twelve (12) months after my employment with Synthes terminates for any reason, voluntary or involuntary, I will not solicit, contact, or provide services to (or attempt to do any of the foregoing), directly or indirectly, for the purpose or effect of competing or interfering with any part of Synthes' Business: (1) any Customer of Synthes within my assigned territory; (2) any Customer of Synthes that I contacted, solicited, received commissions on sales, to whom I provided coverage, or in any way supported or dealt with at any time during the last two years of my employment; (3) any prospective Customer of Synthes that I contacted, for whom I had coverage responsibility, or who received or requested a proposal or offer from me on behalf of Synthes at any time during the last two years of my employment; or (4) any existing or prospective Customer of Synthes for which I had any direct or indirect responsibility at any time during the last two years of my employment. For purposes of this Agreement, "Customer" shall include, without limitation, hospitals; hospital employees who influence or may influence the use or purchase of medical devices in the Business, as defined, including materials management, operating room, sterile processing, and related personnel; and physicians who use or may use the devices supplied within the Business, as defined, and their partners, employees, and staff

3

2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $2290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

nurses.

### NO SOLICITATION OR HIRING OF EMPLOYEES:

I agree that, during my employment and for a period of twelve (12) months after my employment with Synthes terminates for any reason, voluntary or involuntary, I will not, directly or indirectly, (1) solicit, induce, or encourage any employee of Synthes to leave his/her employment with Synthes, (2) offer any employee of Synthes employment elsewhere, (3) participate in the recruitment of any employee of Synthes to work elsewhere, or (4) hire any employee of Synthes to work elsewhere.

### NO COMPETITION IN SAME TERRITORY:

I agree that, during my employment and for a period of twelve (12) months after my employment with Synthes terminates for any reason, voluntary or involuntary, I will not, directly or indirectly, compete in my former Territory with Synthes' Business.  This means that I will not work for or be involved in the Business of any Competitor of Synthes in a managerial, marketing, sales, technical, administrative, or product development capacity, whether as an owner, principal, partner, employee, consultant, contractor, agent or representative.  "Competitor", as used in this Agreement, shall mean any persons or entities who now, or in the future, manufacture, develop, sell, or intend to sell, technologies, products, or services in the Business described above.  "Territory", as used in this Agreement, shall mean the accounts to which I have been assigned or for which I have had coverage responsibility within the last two years of my employment with Synthes.

### FORMER EMPLOYERS:

I will not disclose to Synthes or use for its benefit any information that, to my knowledge, is proprietary or confidential to any of my former employers, without proper consent from my former employer.  I have not signed any non-competition or other contract that prohibits me from being employed by Synthes or assigning my works and ideas to Synthes.

### THIRD PARTY BENEFICIARIES:

I acknowledge that this Confidentiality, Non-Solicitation and Non-Competition Agreement is intended to benefit Synthes USA Sales, LLC, its members, and its and their parents, affiliates, subsidiaries, divisions, and related

4

companies or entities, now existing or hereafter created, including but not limited to Synthes, Inc., Synthes USA HQ, Inc., Synthes USA Products, LLC, Synthes USA, LLC and The Anspach Effort, Inc. I further acknowledge that the intended beneficiaries of this Confidentiality, Non-Solicitation and Non-Competition Agreement are entitled to enforce the provisions of this agreement by seeking injunctive relief or any other appropriate remedy.

REMEDIES AND REFORMATION:

I acknowledge that it would be extremely difficult to measure the damages that might result from any breach by me of this agreement, and that a breach may cause irreparable injury to Synthes or the third-party beneficiaries that could not be compensated by money damages. Therefore, Synthes and any of the third-party beneficiaries will be entitled to enforce this agreement by obtaining a court order prohibiting me from breaching this agreement. The limitations in this agreement which apply for a period of twelve (12) months after termination shall be enforced by a court from the date of the last breach or violation of the applicable restriction(s) up to twenty-four (24) months after termination of employment. If a court decides that any provision of this agreement is not enforceable for any reason, then the rest of this agreement will not be affected. If a court decides that any provision of this agreement is too broad, then the court may limit and/or reform that provision and enforce it as limited and/or reformed. A decision by Synthes or any third-party beneficiary to enforce certain breaches of this agreement but not others shall not be construed as a waiver of any possible remedy that Synthes or any third-party beneficiary has for my breach of this agreement regardless of any claims that I may have against Synthes.

ATTORNEYS' FEES:

I agree to indemnify Synthes for its reasonable attorneys' fees and costs incurred in enforcing the terms of this agreement should I violate any of its terms.

CHOICE OF LAW AND FORUM:

This agreement will be governed by Pennsylvania law applicable to contracts entered into and performed in Pennsylvania. I agree that this agreement shall exclusively be enforced by any federal or state court of competent jurisdiction in the Commonwealth of Pennsylvania and hereby consent to the personal jurisdiction of these courts.

2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

2018-04498-0 Docketed at Montgomery County Prothonotary on 03/02/2018 2:31 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

ASSIGNMENT:

I agree that Synthes USA Sales, LLC may assign part or all of this Agreement to any direct or indirect parent, affiliate, subsidiary, division, related company or entity of Synthes USA Sales, LLC and to any transferee of substantially all of the assets of Synthes USA Sales, LLC and that any assignee shall have the same rights as Synthes USA Sales, LLC.

INTENT TO BE BOUND:

I intend to be legally bound by this agreement, and I intend this to be a sealed instrument.

Date: 9/15/11

RONALD SPOKER

Date: 9/9/11

Synthes USA Sales, LLC

6